THE SNY ISLAND LEVEE DRAINAGE DISTRICT, Appellant, *vs.* THE BOYD LEVEE AND DRAINAGE DISTRICT *et al.* Appellees.

*Opinion filed June 22, 1916.* ·

1. DRAINAGE—*lands embraced in one levee district cannot be included in another.* Lands embraced in a legally organized levee district which have paid the regular assessment and never been judicially disconnected from the district cannot be included in a subsequently organized district so as to deprive the commissioners of the original district of jurisdiction over them, even though .the commissioners made no objection to the inclusion of such lands in the new district and permitted work to be done therein for more minute drainage of the lands.

2. SAME—*when drainage district is not estopped to assert authority over land.* Before a drainage district can be said to be estopped to assert its authority over lands embraced within its boundaries there must be some act by the district itself, and not merely an unauthorized act of its attorney or one of its commissioners, on which to base the claim of estoppel.

3. SAME—*organization of sub-district is not the exercise of a new jurisdiction.* In organizing a sub-district under section 59 of the Levee act the commissioners are only exercising the jurisdiction conferred at the time of the organization of the original district, and the sub-district is not an independent body politic or corporation but is merely a part of the original district and is under the control of the corporate authorities of such district.

APPEAL from the County Court of Pike county; the Hon. PAUL F. GROTE, Judge, presiding.

ANDERSON & MATTHEWS, for appellant.

W. E. WILLIAMS, A. CLAY WILLIAMS, and EDWARD DOOCY, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Sny Island Levee Drainage District was organized in the county court of Pike county in 1880, under the Levee act. It embraces about 110,000 acres of land in Adams, Pike and Calhoun counties. It was organized for the purpose of protecting such lands from the overflow waters of the Mississippi river, and a levee was constructed along the east bank of said river from a point in the south part of Adams county through Pike county and into Calhoun county, about fifty-two miles long. The main channel of the district was and is the Sny E'Carte, a stream which left the Mississippi river in Adams county and ran south through Pike county into Calhoun county, where it again entered the Mississippi river. When the levee was constructed it cut the Sny off from the Mississippi river. A number of creeks flowed into the stream from the bluffs on the east side of the district, and when the Sny was cut off at the upper end by the levee, the current of said creeks carried large quantities of silt and other debris into the Sny and caused it to fill up rapidly. In 1911 and 1914 assessments of $160,000 and $190,000, respectively, were made, confirmed and used for cleaning out and straightening the Sny. The creeks have also filled up, causing them to overflow the adjacent lands, and these lands, after the Sny is cleaned out, will need more minute and complete drainage. Hadley creek is one of the creeks flowing into the Sny and has a watershed of seventy-six square miles. The commissioners of the Sny Island Levee Drainage District, in response to the request of owners of lands in the vicinity of Hadley creek affected by the overflow waters from the creek, employed engineers and investigated the conditions prevailing in the vicinity and made a special report to the county court under section 59 of the Levee act, setting forth in detail a description of the work proposed to be done for the more minute and complete drainage of such lands, together with plans, profiles, maps and specifications,

names of land owners and other exhibits and an itemized statement of the cost of the proposed work, and praying that the report might be approved and confirmed, that the lands affected by the waters of Hadley creek might be organized into a sub-district, to be known as Hadley Creek Sub-district, and that the commissioners might be directed to have a special assessment levied to pay for the construction of the proposed work. The Boyd Levee and Drainage District and certain owners of land in that district filed objections to the report because it included lands within the Boyd Levee and Drainage District, and it was alleged that the Sny Island Levee Drainage District had waived its right to include lands in the Boyd Levee and Drainage District in the Hadley Creek Sub-district. A stipulation was filed that the court should treat the objections as in the nature of a demurrer to the report of the commissioners and should consider them in connection with the facts set forth in the report and the stipulation. The report gave a description of the lands which would be benefited or damaged by the proposed work and the boundaries of the proposed Hadley Creek Sub-district.

There are 7875 acres of land, worth about $80 an acre, seriously affected by the waters of Hadley creek, which have contributed their proportionate share of the costs of the levee of the main district and the cost of cleaning out the Sny. Adjacent to Hadley creek on the east is the Boyd Levee and Drainage District, embracing 2600 acres of land, of which 2380 acres were in the Sny Island Levee Drainage District. These lands were seriously affected by the waters of Hadley creek and will be benefited by the proposed work, and all the lands in the Boyd Levee and Drainage District which were also in the Sny Island Levee Drainage District were included in the proposed Hadley Creek Sub-district. The Boyd Levee and Drainage District was organized in the county court of Pike county in 1883 under the Levee act and has ever since been an active, go-

ing district. It has levied assessments for the purpose of constructing a levee three miles long on the east side of Hadley creek and six miles of main and lateral ditches and an annual benefit assessment of thirty cents per acre. It has now no outstanding unpaid bonds, obligations or .other forms of indebtedness but is wholly free from debt. The improvements constructed by the Boyd Levee and Drainage District were of great benefit to the lands within the district, the principal purpose of its organization being to protect such lands from the overflow waters of Hadley creek and to drain a large expanse of territory within the district covered by what was known as Millhizer pond. The work constructed by the Boyd Levee and Drainage District can be utilized by the proposed Hadley Creek Sub-district. The Sny Island Levee Drainage District offered no objection to the work of the Boyd Levee and Drainage District, and until the report herein was filed, under section 59 of the Levee act, for the formation of Hadley Creek Sub-district, had not questioned the legality of the Boyd Levee and Drainage District or its right to operate. The Sny Island Levee Drainage District, ever since its organization, in 1880, has retained jurisdiction over all the lands in the Boyd Levee and Drainage District which were also in the Sny Island Levee Drainage District, and has assessed benefits against said lands and collected such benefits for the work of the Sny Island Levee Drainage District in the same manner and in the same proportion that it has collected benefits against other lands in the Sny Island Levee Drainage District, and the land owners in the Boyd Levee and Drainage District whose lands are also in the Sny Island Levee Drainage District, and who appear as objectors to the report, have from time to time participated by signing petitions for the appointment of commissioners from year to year in the Sny Island Levee Drainage District.

The cause was heard in the county court of Pike county upon the report and exhibits, the stipulation and the objec-

tions, and the court entered an order sustaining the objections and striking the lands in the Boyd Levee and Drainage District from the report, from which the Sny Island Levee Drainage District has appealed.

The question for determination is, can the lands which are in both the Sny Island Levee Drainage District and the Boyd Levee and Drainage District be included in a sub-district to be organized by the Sny Island Levee Drainage District under section 59 of the Levee act?

The lands in controversy were all included in the Sny Island Levee Drainage District when that district was organized, in 1880, and that district has ever since exercised jurisdiction over those lands in the same way as over other lands in the district. No effort has ever been made to disconnect any of these lands from the district. No objection has ever been made to the exercise of jurisdiction over the land by the commissioners, and, so far as appears, no objection could have been successfully made. We have held in *People* v. *Crews,* 245 Ill. 318, and *People* v. *Lease,* 248 id. 187, that a drainage district cannot be organized out of territory included in a drainage district already organized; that two municipalities cannot exercise jurisdiction over the same territory, for the same purpose, at the same time. In the latter case a drainage district had been organized in the county court of Pike county under the Levee act, comprising about 7000 acres, about 6000 of which were located within the boundaries of the Sny Island Levee Drainage District. The judgment of ouster entered against that district was affirmed. The Sny Island Levee Drainage District therefore did not lose its jurisdiction over the lands in controversy by the organization of the Boyd Levee and Drainage District, and no such claim appears ever to have been made, for the Sny Island Levee Drainage District has continuously exercised the same jurisdiction over these lands as over any other lands in the district. The lands are as much a part of the district as they ever were, and

the jurisdiction of the commissioners over them is not different from their jurisdiction over any other part of the district. In *People* v. *Lease, supra,* we said that section 59 of the Levee act indicates the intention of the legislature that the commissioners of drainage districts should have complete jurisdiction over questions of drainage of the lands of the district and of every part of them, to the exclusion of other authority. The fact that the owners of a portion of the lands of the district have organized another district, and, independently of the commissioners, have expended money and done work for the special drainage of their own lands, and that the commissioners have not interfered with such work, does not deprive the latter of the power to exercise the jurisdiction conferred on them by law.

The Boyd Levee and Drainage District insists that the district is legally organized; that the question of its corporate existence cannot be determined in this proceeding, and that the appellant is estopped to deny or question its legal existence. These questions are not material to be determined. The question is as to the jurisdiction of a drainage district over land legally included within its boundaries which has never been excluded from the district by any judicial proceeding and which no one has ever attempted to exclude from the district. The commissioners of the Sny Island Levee Drainage District could not have lost their jurisdiction over any part of the territory of the district except by virtue of some judicial proceeding to which they were parties or by some act which they have done or omitted to do, and nothing of the kind appears. If an information in the nature of *quo warranto* should be filed against the district or the commissioners, requiring them to show by what authority they exercise jurisdiction over the lands in question, a plea setting up the organization of the Sny Island Levee Drainage District would be a sufficient answer, and it would not be a sufficient replication to show that the land owners had organized another drainage dis-

trict out of a portion of the lands in the original district over which the latter district had continuously exercised its jurisdiction.

There is no ground for the claim of *laches* or estoppel. The land owners have never interfered with the commissioners of the Sny Island Levee Drainage District or done any act which required those commissioners to take any action. On their own lands they have constructed certain work which the commissioners did not deem an interference with the work of the district, which was beneficial to their lands and which the commissioners saw no occasion to interfere with. The acquiescence in this work is no ground for prohibiting the exercise by the commissioners of their jurisdiction over the lands now, when their plans for more minute and complete drainage of the lands of their district require them to do so.

The land owners have done nothing on the strength of anything which the commissioners of the Sny Island Levee Drainage District have done or omitted which has changed their position in any way. They all had full knowledge of the fact that the commissioners of the Sny Island Levee Drainage District were claiming jurisdiction over these lands and were collecting assessments and exercising jurisdiction in every way in which such jurisdiction could be exercised. They did not interfere with the action of the land owners in attempting to organize another drainage district and they did not encourage or assist in its organization. The attorney for the Sny Island Levee Drainage District was the attorney for the Boyd Levee and Drainage District when it was organized and for some years afterward, and one of the commissioners of the Sny Island Levee Drainage District was appointed one of the first commissioners of the Boyd Levee and Drainage District and acted as such for about six years. But their acts were not the acts of the Sny Island Levee Drainage District and were not binding on it. They are not shown to have been

done by the authority of the district or to be other than the private acts of the individuals. If the district could be estopped in such a case as this, it could only be by some act done or ratified by the corporation or by its authority.

The organization of a sub-district is not the organization of a new drainage district. A sub-district is not an independent municipal organization but is a mere subdivision of the larger work, intended for convenience in the management of the work. The sub-districts organized at the option of the commissioners of the main district are not independent bodies politic and corporate but are dependent on the original work, and the corporate authorities of the main district act for the sub-districts. (*People* v. *Swigert,* 130 Ill. 608.) In organizing a sub-district the commissioners of the original district are only exercising the jurisdiction conferred at the time of the organization of the original district. No question arises now as to the legality of the organization of the Boyd Levee and Drainage District or its right to exercise jurisdiction over these lands. If it shall hereafter attempt to exercise jurisdiction so as to interfere with the jurisdiction of the Sny Island Levee Drainage District the question may then be determined in an appropriate proceeding. The owners of the land in the Boyd Levee and Drainage District within the Sny Island Levee Drainage District may have estopped themselves by their acts from questioning the jurisdiction over them of the Boyd Levee and Drainage District, but the commissioners of the Sny Island Levee Drainage District are in no such situation. Their jurisdiction over the lands in controversy has never been questioned until the present proceeding and nothing has been shown to deprive them of such jurisdiction.

The order of the county court will be reversed and the cause remanded.

*Reversed and remanded.*