(No. 11890.—Judgment affirmed.)

THE HADLEY CREEK SUB-DISTRICT, Appellee, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant.

*Opinion filed June 20, 1918—Leave to file petition for rehearing denied October 2, 1918.*

1. DRAINAGE—*question whether all property has been included cannot be raised on hearing of objections as to benefits.* Under the Levee act the question whether all the property that will be benefited has been included within the drainage district cannot be raised on the hearing of objections to the assessment of benefits, where the objector has failed to appeal from the order of organization finding that the commissioners "have described all the lands which will be benefited."

2. SAME—*when jury are justified in making assessment according to assessment roll.* Where the jury do not view the premises they are justified in making an assessment in accordance with the assessment roll if the objector fails to furnish any testimony on his own behalf upon which to base a different assessment, and it is not sufficient for the objector to show merely that the amount set down in the assessment roll exceeds the benefits to his land or is more than the proportionate share of the cost of the improvement.

CARTER, CARTWRIGHT and DUNN, JJ., dissenting.

APPEAL from the County Court of Pike county; the Hon. PAUL F. GROTE, Judge, presiding.

WILLIAM & BARRY MUMFORD, (J. A. CONNELL, of counsel,) for appellant.

ANDERSON & MATTHEWS, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is an appeal by the Chicago, Burlington and Quincy Railroad Company from a judgment of the county court of Pike county confirming a drainage assessment made by a jury against appellant's right of way in the Hadley Creek Sub-district, a sub-district organized by a proceeding in the county court of Pike county out of lands lying within the boundaries of the Sny Island Levee Drainage District, hereinafter referred to as the Sny district. The Sny district was organized in the county court of Pike county in 1880 under the Levee act. It is about fifty miles long, northerly and southerly, and from three to seven miles wide, contains about 110,000 acres of land, and was organized for the purpose of protecting the low lands on the east side of the Mississippi river from overflow. It does not extend east to the bluffs but only to the high-water line established during the flood stage of the river in 1851. The main outlet of the Sny district is known as the Sny E'Carte canal. From the bluffs on the east Hadley creek flows across a portion of the lands in the Sny district into the Sny E'Carte canal, carrying the surface waters from seventy-six square miles of territory, which at times inundate lands both within the Sny district and east thereof. January 20, 1916, the commissioners of the Sny district filed in the county court of Pike county a special report under section 59 of the Levee act, which provides for the organization of sub-districts within drainage districts organized under that act, setting forth the necessity of further drainage in that portion of the Sny district subject to overflow from Hadley creek and consisting of about 8129 acres, proposing a plan of improvement by means of both levees and ditches at an estimated cost of $97,392.10, and praying for the organization of those lands subject to overflow from Hadley creek into a

sub-district to be known as Hadley Creek Sub-district. To this special report, which under the statute stands as the petition for the organization of the sub-district, was attached a report made to the commissioners by the engineer of the Sny district, in which it was stated that "the flood waters of Hadley creek flooded approximately 938.76 acres of land that lie outside of the Sny Island Levee Drainage District," and that "the work herein proposed will benefit said lands and they should be taken into the district." The statutory notices of hearing were given, and the Boyd Levee and Drainage District and certain land owners in that district appeared and filed objections to the report because it included lands within the Boyd Levee and Drainage District. The county court sustained these objections and ordered the lands in the Boyd Levee and Drainage District stricken from the report, but upon appeal by the Sny district we reversed the order of the county court and remanded the cause for further proceedings. (*Sny Island Levee Drainage District* v. *Boyd Levee and Drainage District,* 273 Ill. 533.) After the mandate of this court had been filed in the county court the cause was re-docketed and new notices of hearing were given. Appellant then appeared and filed objections to the report on the ground that the plan proposed by the commissioners would be unnecessarily expensive and burdensome to it, but expressly stated that it did not object to the making of the improvement in a proper and economical manner. On October 21, 1916, the county court entered an order overruling appellant's objections, approving the plan of improvement proposed by the commissioners, fixing the boundaries of the district as recommended in the commissioners' report, declaring the lands embraced within those boundaries to be organized into a sub-district to be known as the Hadley Creek Sub-district, and directing the commissioners to prepare and file a commissioners' roll of assessments of benefits and damages. This order found, among other things, that the com-

missioners "have described all the lands which will be benefited or damaged" by the proposed work, and that all such lands are within the boundaries of the Sny district. Thereafter the commissioners filed in the county court their roll of assessments of benefits and damages, assessing the whole cost of the improvement, as well as the entire annual cost of maintenance, against the lands in the sub-district as organized. Appellant's right of way in the sub-district was assessed $7534.91 for the construction work and $260 annually for maintenance. Upon the filing of the commissioners' roll of assessments of benefits and damages the commissioners gave notice, as required by law, of the time and place fixed for the hearing before the jury in the county court upon all questions of benefits and damages to lands in the district. Appellant filed objections to the assessment roll, assigning as grounds for objection that all the lands which would be benefited by the proposed improvement were not included in the sub-district and were therefore not assessed for benefits; that the assessment against appellant's right of way greatly exceeded the benefits which such right of way would receive from the proposed improvement, and that such assessment is more than appellant's proportionate share of the cost of constructing and maintaining the improvement. At the time specified in the notice a jury was called in the county court. The commissioners presented their assessment roll, and the commissioners and the engineer of the district testified in support of the assessment made against appellant's right of way. Appellant offered no evidence but was content to rest its case upon the evidence introduced by the district and the cross-examination of the commissioners and engineer. Appellant did not request that the jury view the premises, but, on the contrary, it was stated during the trial that neither the commissioners nor appellant desired the jury to view the lands. During the progress of the hearing the commissioners, upon their own motion, were permitted to amend their

assessment roll by reducing the amount assessed against appellant's property for annual benefits from $260 to $200, and making annual assessments of $11.60 against the town of Pleasant Vale, $33.40 against the town of Cincinnati and $15 against the town of Kinderhook, in Pike county, for annual benefits to the highways in the sub-district. After hearing the evidence and arguments of counsel, and without viewing the lands in the district, the jury returned a verdict assessing benefits against all the lands in the sub-district, including appellant's right of way, at the same amounts as fixed in the amended assessment roll of the commissioners, and the court rendered judgment on the verdict. From that judgment appellant prosecuted this appeal.

Appellant first contends that the county court should have sustained its objection that all the lands which would be benefited by the proposed improvement were not included in the sub-district and were therefore not assessed for benefits. The basis for this contention is the fact that it appears from the report of the engineer of the Sny district, which was attached to the commissioners' report, and from the cross-examination of the commissioners and engineer at the hearing before the jury upon the question of benefits, that approximately 938.76 acres of land lying east of the Sny district will be benefited by the proposed improvement, but as those lands were not included within the Sny district they were not and could not be included in the sub-district as originally organized and consequently were not assessed in this proceeding. The appellant contends that those lands should have been annexed and brought into the sub-district, under the provisions of sections 58 and 59 of the Levee act, before any assessment was made, while appellee argues that under those sections of the statute it is discretionary with the commissioners whether or not to annex lands outside the sub-district which will be benefited before the assessment for the construction of the improvement is made, and that they may be afterwards brought into the district, in accord-

ance with the provisions of said section 58, and then required to contribute their proportionate share to the cost of the improvement, and that it is not a valid objection to the assessment against the appellant's property that such lands have not been assessed for benefits in this proceeding. While we think the better course to pursue would be to annex all lands to the district which will be benefited before making the assessment for the construction work and for annual maintenance, the objection urged by appellant is not now, and was not when made in the county court, open for consideration. In the order of October 21, 1916, organizing the sub-district the county court found that the commissioners "have described all the lands which will be benefited" by the proposed improvement, and that all of such lands are within the boundaries of the Sny district. Had appellant desired to question this finding it should have appealed from that order. It did not appeal but acquiesced in the finding, and it could not thereafter object to the making of an assessment against its property on the ground that the finding of the court in the order of October 21, 1916, was erroneous, and that, in fact, there were lands which had not been included in the sub-district which would be benefited and which had not been assessed for benefits.

It is also argued by appellant that the commissioners considered an improper element in making the assessment against its right of way. While one of the commissioners testified that among the benefits which appellant would receive from the improvement would be increased travel on account of the increased production of the lands in the district, he did not testify that he took this element into consideration in fixing the assessment against appellant's property. On the contrary, a fair consideration of the testimony of this commissioner and the testimony of the other commissioners shows that this element was not taken into consideration in fixing the assessment against appellant's right of way.

There is no evidence whatever in the record tending to show that the assessment against appellant's right of way exceeds the benefits which such right of way would receive from the proposed improvement. On the contrary, all the evidence is to the effect that appellant's right of way will be benefited more than it is assessed.

The objection that the assessment against the appellant's property is more than its proportionate share of the cost of constructing and maintaining the improvement is based entirely upon the fact that the Mississippi River Power Company, which is engaged in the business of generating electricity and transmitting it by means of wires strung on steel towers from Keokuk, Iowa, to St. Louis, Missouri, owns a strip of land one hundred feet wide, extending through the sub-district a distance of four and one-half miles, adjacent to and parallel with the right of way of appellant through the district, upon which strip the steel towers are erected on concrete bases and telephone poles carrying private telephone wires used in conducting the business of the power company are placed; that the strip of land owned by the power company contains 58.6 acres and is assessed $250 for special benefits and $24.84 for annual maintenance, while appellant's right of way contains but 39.8 acres and is assessed $7534.91 for special benefits and $200 for annual maintenance; and upon the further fact that there are twenty-two and one-half miles of public highway in the sub-district, against which there was assessed only $110 for special benefits and $60 for annual maintenance. The jury is presumed to make the assessment of benefits from the evidence before it and from its view of the premises, in case any of the parties request that such view be made. The assessment roll made by the commissioners, under section 17 of the present Levee act, does not constitute the assessment of benefits against the lands of the district but is made and filed as the commissioners' claim against the several land owners and tracts involved. (*Hillview Drain-*

*age District* v. *Dowdall,* 276 Ill. 33.)    When offered before the jury, whose verdict constitutes the assessment of benefits against the lands of the district, the commissioners' roll makes out a *prima facie* case in favor of the district that the lands therein described will be benefited to the extent shown by the assessment roll and that the amount assessed against each tract is the proportionate share of the entire cost of the improvement to be borne by that tract, and it is then incumbent upon the land owner to rebut this *prima facie* case by showing that his or its land has been assessed by the commissioners more than it will be benefited or for a greater amount than its proportionate share of the cost of the improvement; and under the present statute, where the jury and not the commissioners make the assessment, if the jury does not view the premises it is not sufficient to merely prove that the amount claimed by the commissioners in their assessment roll exceeds the benefits to the particular tract or is more than the proportionate share of the cost of the improvement, as such proof furnishes no basis upon which the jury can act in making a proper assessment, but the objector must go further and show the jury what sum will be a proper assessment against his or its land. In *City of Lake Forest* v. *Buckley,* 276 Ill. 38, in discussing a question relating to an assessment for a local improvement, we said: "Opinion evidence must be relied upon wholly in cases of this kind to determine the amount of benefits, if any, to property by reason of such an improvement," and, aside from the commissioners' roll of assessments of benefits and damages and the view of the jury, the same is true in drainage cases. The only opinion evidence in this case consists of the testimony of the commissioners and of the engineer of the district, all of whom testified that appellant's right of way was not assessed for a greater amount than it would be benefited and that the assessment against such right of way was not more than its proportionate share of the cost of the improvement. The

cross-examination of these witnesses disclosing the situation with reference to the strip of land belonging to the power company and the assessment against that strip as compared with the assessment against appellant's right of way, and the situation with reference to the public highways in the sub-district and the assessments against certain towns for benefits to such highways as compared with the assessment against appellant's property, furnished no basis upon which the jury could assess any specific sum against appellant's right of way or against the power company's land or against the towns for benefits to highways. In order to be in a position to urge the objection which it now urges, appellant should have offered the testimony of witnesses showing what specific amount would be the proportionate share of the cost of the improvement and of keeping the improvement in repair which should be borne by appellant's right of way. Without such testimony and without having viewed the lands in the district the jury could not determine from the testimony before it what sum should be assessed against appellant's right of way or against the strip belonging to the power company or against the towns for benefits to highways as the proportionate share of the cost of the improvement, even though the jury might believe that the assessment, as between appellant's property and that of the power company and the highways, was out of proportion to benefits. Appellant having failed to furnish the jury with any testimony which would form a basis upon which to make any other or different assessments against its right of way or against the property of the power company or against the towns for benefits to highways than the assessments fixed by the commissioners in their roll of assessments of benefits and damages, the only course open for the jury to pursue was to return a verdict in accordance with the assessment roll of the commissioners, and the court did not err in rendering judgment on that verdict.

The judgment of the county court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTER, dissenting:

I do not concur in the conclusion or reasoning with reference to certain points decided in the foregoing opinion. I think the opinion is wrong with reference to its holding as to the taxes levied against the public highways of the district and also as to the assessment levied against the strip of land belonging to the Mississippi River Power Company.

It appears from the evidence in the record that the public highways in said sub-district are some twenty-two miles in length; that they were assessed, all told, the sum of $110; that the annual assessment levied on said highways amounted to $60. · From the testimony of the commissioners given on direct and cross-examination on the stand, and from that of the engineer of the district, it is clear that this small assessment was made because, as they were advised, it was necessary so to do to comply with the law to assess all the property within this sub-district, and also on the ground that the land under the highways was assessed along with the adjoining farm land. It is insisted by counsel for appellant that under sections 17, 17a and 17b of the Levee act, as construed by this court in *Highway Comrs. v. East Lake Fork Drainage District,* 127 Ill. 581, *Highway Comrs. v. Big Four Drainage District,* 207 id. 17, and *Vandalia Drainage District v. Vandalia Railroad Co.* 247 id. 114, these highways should have been assessed a much higher amount. On the other hand, it is insisted by counsel for appellee that under the holding of this court in *People v. Block,* 276 Ill. 286, the only authorities who possess the right to levy a tax or incur a liability for roads and bridges in a town are the highway commissioners of the town, and that the drainage commissioners of this sub-district are in no way to be considered the corporate authorities of the respective towns, and that therefore, under the reasoning of the last cited decision, the drainage commissioners have no power to impose a debt on any of the three towns through which these public highways are laid out. The reasoning in

this last case is not decisive on this question. Since that decision was rendered this court has held (*Shabbona Special Drainage District* v. *Town of Cornwall,* 281 Ill. 551,) that the drainage commissioners were authorized to assess taxes against public highways within the drainage district controlled by said commissioners, and this practice has been sanctioned by this court in other cases.

It is clear from the testimony of the commissioners that the highways will be materially benefited and that these nominal assessments were made against the public highways, not on the basis of benefits to said highways, but because the commissioners thought it would be illegal to assess the highways any larger amount. The drainage commissioners being mistaken as to their right, under the law, to assess the highways according to the benefits to said highways, it was the duty of the trial court, when the testimony showed that they assessed them not according to benefits, but merely a nominal sum because they thought they had no right to assess them a greater amount, to re-refer the roll to the commissioners for the purpose of assessing said highways in proportion to the benefits they received by the organization and draining of the proposed sub-district. There can be no question, under the law, that drainage assessments should be made in proportion to the benefits to each tract of land, and that no tract of land within the district should be assessed for benefits in a greater amount than its proportionate share of the estimated cost of the entire work as compared with the other property within said district, and that assessments regardless of benefits should not be sustained, (*Hosmer* v. *Hunt Drainage District,* 135 Ill. 51,) and that an assessment levied upon all property within the district should be just and equitable. (*McCaleb* v. *Coon Run Drainage District,* 190 Ill. 549.) The public highways having been assessed too small an amount, it necessarily follows that the assessment of the appellant railroad company's right of way was proportionately too high, and no matter

whether the objectors put in any proof on this question or not, when it clearly appeared from the testimony offered by the drainage district through the commissioners and engineer, that the public highways were assessed on a wrong basis, it was the duty of the trial court to order them assessed according to the proper basis.  It is not argued in the opinion of the court that public highways could not be assessed for benefits by the drainage commissioners, but it is held that from the proof in the record there was no authority to assess them more than they were assessed.  I think the record clearly contradicts this conclusion.

Counsel for appellee argue that under section 17*a* of the Levee act the commissioners' roll, when introduced on the hearing before the jury, made out a *prima facie* case.  This is the law.  (*Cache River Drainage District* v. *Chicago and Eastern Illinois Railroad Co.* 255 Ill. 398; *Sny Island Levee Drainage District* v. *Shaw*, 252 id. 142.)  It is argued that having made out this *prima facie* case by introducing the roll, that *prima facie* case is not overcome by any evidence in the record.  Counsel for appellee introduced the commissioners, and they testified on behalf of the district after introducing the roll, and having been offered as witnesses and having testified they were subject to cross-examination, and if their testimony was competent, then it follows that it contradicted the *prima facie* showing of the assessment roll by such roll.  Counsel for appellee neither on the trial below nor here make any objection as to the competency of the testimony given by these commissioners on cross-examination.

It appears from the evidence given by the commissioners that the strip of land owned by the Mississippi River Power Company, except as to its use for the erection of the lines of poles for the power-current wires and telephone wires, was largely unimproved farm land or farm land cultivated by the original owners.  No positive proof was offered as to whether this strip of land of the power company was owned in fee by said company, but it seems to be assumed

by counsel for both parties in their briefs that the power company had the fee simple title to this land. One of the commissioners testified that the farm land in the district would be benefited by the proposed improvement approximately $50 an acre as farm land, only. No attempt was made to contradict this testimony of the commissioner on this question. Counsel for appellee in their briefs concede that the assessment against the land of the power company was made solely on the basis (as testified to by the commissioners) of the benefit to said land that would result in preventing it from being overflowed and thus facilitating the work of the power company's employees in keeping said poles and wires in repair. If the power company owned this land in fee it could use it for any purpose that it desired, not only for erecting poles for electrical power currents and telephone wires, but for any other purpose that under the law it was authorized to use it for. The power company could sell such land, if desired, to other parties. It must be assumed from the briefs of counsel that the power company had the fee simple title. This being so, the assessment on said strip of land belonging to the power company was not made on a correct basis. "In making an assessment of actual benefits it may undoubtedly be proper to take into consideration the fact that the property is being devoted to a permanent use, which, for the time being at least, renders the market value of little or no moment. It has already been stated that this does not preclude the property being assessed for benefits. As has been justly remarked of some cases of this nature which have been considered by the courts when lands were devoted to church or cemetery purposes, objections to the assessment proceed on the ground that the owner cannot apply the property to any new or different use. When the owner has the unrestrained power of alienation and the property may be converted to any new use at his pleasure, it is difficult to see how, upon any principle, an exception can be made to the

rule regarding only the market value. After the owner has escaped what would otherwise be a great burden, on the ground that he does not intend to use the property in a way which would make the improvement beneficial, he may change his mind, throw the property into the market and realize advantages for which others have been made to pay." (Cooley on Taxation,—2d ed.—663, 664.) This court has said that "the measure of benefits to city lots owned by a street railway company, not used for railroad but for other purposes, is the enhanced value of the property for any purpose by reason of the construction of the improvement, notwithstanding under the grant the use is restricted to railroad purposes." (*City of Lincoln* v. *Chicago and Alton Railroad Co.* 262 Ill. 11, and cases there cited.) I think the doctrine laid down in this last decision can and should be applied to this strip of land owned by the power company, assuming that it owns the title in fee. If it would enhance the value of the property as farming land $50 an acre, I do not see why it should not be assessed the amount of the benefit for any purpose for which it could be reasonably used if the land were sold in the open market. In my judgment, therefore, it was the duty of the trial court, when the evidence of the commissioners and the engineer showed that the property was assessed only a nominal sum because it would only benefit the power company as a power company and facilitate the work of its employees in repairing the telephone poles and wires, to order the assessment roll re-referred and this strip of land assessed on a different basis.

For these reasons I think the judgment of the trial court should be reversed and the cause remanded for further proceedings in harmony with the views stated in this dissent.

CARTWRIGHT and DUNN, JJ.: We concur in the foregoing dissenting opinion of Mr. Justice Carter.