WILLIAM P. HAMMOND

*v.* ·

ED. S. CARTER.

*Filed at Springfield May 12, 1896—Rehearing denied June 10, 1896.*

1. DRAINAGE—*annual assessment for repair of levee.* An annual assessment for keeping the levee in repair may be made by the jury in assessing benefits from a levee. (Laws of 1879, p. 120.)

2. SAME—*court cannot enlarge assessment made by jury for repairs.* A county court cannot subsequently enlarge the amount of an annual assessment for repairs made by a jury and confirmed by the court on the organization of a levee district. (Laws of 1879, p. 120.)

3. TAXES—*sale for illegal drainage assessment is void.* A sale of land for a delinquent drainage assessment which had been by the county court raised, without authority of law, to a higher figure than that fixed by the jury originally making the assessment, is void and passes no title.

4. RES JUDICATA—*does not apply on second trial under statute.* On a second trial in ejectment had under the statute upon payment of costs, (Rev. Stat. 1874, p. 447, sec. 35,) the doctrine of *res judicata* does not apply, though a court of review would affirm a second judgment resulting the same way as the first, if based on the same evidence. (*Smyth* v. *Neff*, 123 Ill. 310, distinguished.)

APPEAL from the Circuit Court of Hancock county; the Hon. CHARLES J. SCOFIELD, Judge, presiding.

MANIER, MILLER & WILLIAMS, and TRUMAN PLANTZ, for appellant.

W. C. HOOKER, and G. EDMUNDS, for appellee:

*Res judicata* embraces not only what was actually determined in the former case, but also extends to any other matter properly involved and which might have been raised and determined in it. *Stockton* v. *Ford*, 11 How. 232, and 18 id. 418.

The record in this case presented by appellee, of judgment in the county court, being precisely the same as that relied upon in the original trial, to which objections were made by appellants, which objections were overruled by the court and the judgment sustained by this

court, upon the principle laid down above extends to the objections now sought to be made but which were waived on the former trial. *Rogers* v. *Higgins*, 57 Ill. 244; *Kelly* v. *Donlin*, 70 id. 378; *Bailey* v. *Bailey*, 115 id. 551; *Dyer* v. *Hopkins*, 112 id. 168; *Warren* v. *Cook*, 116 id. 199; *Dilworth* v. *Curts*, 139 id. 508; *Smyth* v. *Neff*, 123 id. 310; *Newberry* v. *Blatchford*, 106 id. 584; *Hollowbush* v. *McConnel*, 12 id. 203; *Reed* v. *West*, 70 id. 479; *Smith* v. *Brittenham*, 94 id. 624; *Rising* v. *Carr*, 70 id. 596.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

This was an action of ejectment, brought by Edward S. Carter on the 10th of August, 1893, against William P. Hammond and others, to recover the south-west quarter of section 8, township 3, north, range 9, west, in Hancock county. At the October term, 1893, of the Hancock circuit court a trial was had before the court, without a jury, resulting in a judgment for the plaintiff, to reverse which the defendant Hammond appealed to this court, filing his bond December 23, 1893. At the October term, 1894, of the circuit court, within one year after the rendition of the first judgment of that court, the cause was re-instated upon the docket, and upon motion of the defendants, proof being made of the payment of all costs, the former judgment was by the court vacated and a new trial granted under the statute. The cause was at that and subsequent terms continued until the October term, 1895, when another trial was had before the court, without a jury, again resulting in a judgment for the plaintiff, to reverse which Hammond again appealed.

Before the last trial, and on January 14, 1895, the judgment first rendered by the circuit court of Hancock county was affirmed in this court. (*Hammond* v. *Carter*, 155 Ill. 579.) The plaintiff claimed title to the land under a tax deed dated July 29, 1893, executed by the county clerk of Hancock county on a sale of the land for taxes

on May 29, 1891. On the first trial various objections were interposed by the defendants to the tax title, and on the appeal we held these objections invalid. None of these objections are now relied upon, but on the second trial the plaintiff introduced the same evidence which was introduced on the first trial, but the defendants introduced evidence in regard to the "repair tax," so-called, and the "town tax," under which it is claimed the tax sale was invalid.

The judgment for taxes upon which the land was sold was rendered at the May term, 1891, of the county court of Hancock county. The judgment included an item of $48 for repair tax, and it is contended that the amount is $14.15 in excess of the sum authorized by law. In order to determine this question a brief reference to the facts upon which the tax is predicated seems to be required.

The Hunt drainage district, within which the land is located, was organized under an order of the county court November 17, 1879, under the provisions of an act entitled "An act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," approved and in force May 29, 1879. (Laws of 1879, p. 120.) Soon after the organization of the district, proceedings were instituted to raise money to construct a levee by an assessment of benefits on the property in the district. An assessment roll was made and returned and confirmed by the county court, payable in installments. Under the assessment first made the land in question was assessed, total benefits $576 and annual assessment for repairs $33.85. The first assessment proving insufficient to pay for the construction of the levee, a second assessment was made and confirmed on April 6, 1887, whereby there was charged against the land in question the sum of $824, and the same was made payable in installments. So, also, a third assessment

was made and confirmed on January 7, 1889, under which the land involved was assessed $211.20, which was also made payable in installments. In the second and third assessments no allusion was made to the question of repairs. On July 9, 1890, the commissioners of the district presented to the county court their annual report showing the condition of the levee, in which they asked for an annual assessment of thirty cents per acre on all the lands of the district to pay for necessary repairs, etc. On August 1 the county court approved the report, and ordered that there be assessed and collected for the year 1890, of said repair tax, the sum of thirty cents per acre on all the lands within said drainage district. It is contended that the county court had no authority to make this order.

Section 16 of the Drainage act (Laws of 1879, p. 125,) provides, that upon the organization of a drainage district a jury may be empaneled, in the county court or before a justice of the peace, to make an assessment of damages and benefits. Section 17 provides that the jurors empaneled shall elect one of their number foreman, and proceed to examine the lands, and shall ascertain the damages and benefits, and shall make out an assessment roll, etc., "but the amount assessed for keeping said levee or ditch in repair shall not, in the aggregate, amount to a sum, in any one year, greater than would be produced by thirty cents per acre on all the lands so assessed." Section 26 of the act provides, that the court, when the assessment is confirmed, may order the assessment of benefits to be paid in installments. The section then provides: "But in case where a levee or ditch has been heretofore built under any law of this State, or may be hereafter built under the provisions of this act, the annual assessments for keeping the same in repair shall be due and payable on the first day of September, annually, and shall be a lien on the lands upon which said assessments are made from and after

the confirmation of the report. The court in which such proceedings are had shall require from said commissioners a report of the condition of the levee or ditch at its July term of each year, together with their estimate of the amount necessary to keep the levee or ditch in repair and pay all incidental and necessary expenses for the ensuing year. And if the court shall find that a less amount will be required for such ensuing year than the whole amount of the assessment for that year, then the court shall, by an order, fix the amount to be paid for such year, and only that amount shall be collected, and the excess of such assessment over and above the amount so fixed by said order for said year shall be remitted by law and shall not thereafter be collected."

These sections of the law of 1879, which was in force when the district was organized and when the first assessment was made by the jury and confirmed by the court, authorize the jury, in assessing benefits, to also make an annual assessment for keeping the levee in repair. The statute is not as plain on this subject as it might be, but we are satisfied that the language employed will bear no other construction. The authorities of the drainage district evidently placed this construction on the act, otherwise no assessment for annual repairs would have been made by the jury or confirmed by the county court.

The annual assessment for repairs having been made by the jury and confirmed by the court, had the county court power or authority to enlarge the amount in July, 1890? We find nothing in the statute conferring such authority. Here an annual assessment for repairs had been made by a jury on the land of $33.85, which had been confirmed by the court, and under the act the amount was payable annually, on the first day of September, and in the absence of a statute authorizing the county court to enlarge the amount, which we have not been able to find, no authority existed. (See *Robeson* v. *People ex rel. ante,* p. 176.) When the report of the commissioners in regard

to the condition of the levee, which is required to be sub-
mitted to the county court at its July term in each year,
comes in, under the express language of section 26, (which
now forms a part of section 26½ of the Drainage act of
1885,) if the court shall find that a less amount will be
required for repairs for the ensuing year than the whole
amount assessed for that year, then the court shall, by
an order, fix the amount to be paid, and that amount only
shall be collected and the excess shall be remitted.   But
while the court is authorized by the statute to reduce
the amount there is no authority to enlarge.   Moreover,
the fact that a portion of section 26½ authorizes the com-
missioners, under certain circumstances, to borrow money
to protect the levee in case the annual amount assessed
for repairs proves insufficient, would seem to indicate
that power to enlarge the annual assessment for repairs
had not been conferred on the county court, but that
where an emergency arose resort should be had to a loan.
Our conclusion therefore is, that the action of the county
court increasing the annual assessment on the land from
$33.85 to the sum of $48 was unauthorized, and the tax
as to the excess was void.   This part of the tax being
void, the sale of the land on the void tax did not pass
title to the land to the plaintiff.

As the decision of the question in regard to the repair
tax is conclusive of the judgment, it will not be neces-
sary to consider the question in regard to the town tax.

It is, however, claimed by appellee, that although the
tax for which the land was sold was void, still appellee
was entitled to recover upon the ground that the former
judgment in favor of appellee, which was affirmed in this
court, was *res judicata*.   On the second trial the plaintiff
introduced the same evidence which he introduced on the
first trial, but the evidence introduced by the defendants
on the second trial in regard to the repair tax and the
town tax was new evidence.   But this evidence was in
existence, and might have been introduced on the first

trial if defendants had so desired. It may be conceded that *res judicata* embraces not only what was actually determined in the former case, but also extends to any other matter properly involved and which might have been raised and settled in the former case. There was nothing involved on the second trial which might not have been raised or determined on the former trial.

But has the doctrine of *res judicata* any application to an action of ejectment where a second trial is provided for by the statute? The statute (sec. 35, chap. 45,) provides that "at any time within one year after a judgment, either upon default or verdict in the action of ejectment, the party against whom it is rendered, his heirs or assigns, upon the payment of all costs recovered therein, shall be entitled to have the judgment vacated and a new trial granted in the cause." Here the costs were paid, the judgment vacated and a new trial granted. In *Edwards* v. *Edwards*, 22 Ill. 121, the question arose in regard to the force and effect of a new trial in an action of ejectment, and it was held that the award of a new trial wipes out the verdict, and the judgment is no bar to any proceeding. In *Sheldon* v. *Van Vleck*, 106 Ill. 45, a like question arose, and the court held that the effect of the new trial in an action of ejectment was to vacate and render wholly inoperative the prior judgment and leave the parties as they stood before the trial. In the decision of the case it was said (p. 48): "Upon the payment of the costs in the former suit in conformity with the order of the court, the judgment therein became vacated and wholly inoperative, leaving the suit and the parties thereto in precisely the same situation as if no trial had ever taken place or judgment had been rendered, except that after such trial and judgment the plaintiff could not, as a matter of right, demand another new trial under the statute. In the case of *Edwards* v. *Edwards*, 22 Ill. 121, where the facts are substantially the same as they are in this case, so far as the question in hand is concerned, it

is said: 'Setting aside the verdict is as if it had never been, and cannot be used for any purpose. Followed up by a voluntary non-suit the whole action and all its parts are null.' That case is conclusive of this." The same rule is announced in *Preachers' Aid Society* v. *England,* 106 Ill. 125. See, also, *Gibson* v. *Manly,* 15 Ill. 140, and *Rees* v. *City of Chicago,* 40 id. 107. Indeed, under the language of the statute it is not perceived how any other rule could be adopted. The statute provides that upon the payment of costs the judgment shall be vacated and a new trial granted. When the judgment is vacated it is annulled—it stands for naught. In other words, the case occupies the position it would occupy if no judgment had ever been rendered. How can any force or validity be given on a second trial to a judgment of that character? When a judgment has been rendered in an ordinary action at law or in chancery, and the same matters arise between the same parties on a second action, it is very proper to apply the doctrine of *res judicata,* as the parties have had their day in court and no second trial has been conferred by law. But in actions of ejectment, where the title to land is involved, the legislature has seen proper to provide that the parties may have two trials, that they may have two chances to establish title to the property. If the doctrine of *res judicata* is applicable and the second trial to be governed by the first, the statute will be abrogated and set aside.

*Smyth* v. *Neff,* 123 Ill. 310, has been cited and relied upon by appellee. Expressions may be found in the opinion in that case which seem to support appellee's view, but when the case is fully considered it will be found that it does not support the rule contended for. It nowhere appears, from the statement or opinion of the court, that a new trial had been granted in that case under the statute. Moreover, evidence introduced on the second trial which was not introduced on the first was considered, and it was conceded that the party had

the right to have the bearing and effect of such evidence considered in the decision of the case. It may be conceded if the same evidence had been introduced on the second as on the first trial, with no additional evidence, in the decision of the case we would adhere to our former decision and affirm the judgment, but not on the ground the case was controlled by the doctrine of *res judicata.*

The judgment of the circuit court will be reversed and the cause remanded.     *Reversed and remanded.*