O. R. BROOKS *et al.* Appellees, *vs.* FRANK L. HATCH *et al.* Appellants.

*Opinion filed December 17, 1913.*

1. CONSTITUTIONAL LAW—*constitution does not prohibit drainage assessment to maintain pumping plant.* Section 31 of article 4 of the constitution, relating to drainage legislation, will not be construed as depriving the legislature of power to provide by law for a special assessment in levee drainage districts to defray the expenses of maintaining and operating pumping plants, even though such expenses, in cities and villages, must be defrayed by general taxation. (*McChesney* v. *Village of Hyde Park,* 151 Ill. 634, explained and limited.)

2. SAME—*when act is invalid as being an amendatory act not passed in proper manner.* Even though an act of the legislature does not expressly purport to amend any other act, yet if it, in fact, makes changes in an existing statute, substitutes new provisions for old ones, adds new provisions and mingles new ones with old ones in an endeavor to make a new and connected piece of legislation, the act must be considered as an amendment of the earlier act, and is invalid as not complying with section 13 of article 4 of the constitution, relating to amendatory statutes.

3. SAME—*Pumping Plant acts of 1905, 1907 and 1911 are invalid, as attempted amendments of the Levee act.* The Pumping Plant act of 1905, (Laws of 1905, p. 197,) although professing to

be an independent act, is, in fact, an amendment of sections 17½ and 26½ of the Levee act without complying with section 13 of article 4 of the constitution, and is invalid; and the same is true of the act of 1907, (Laws of 1907, p. 283,) and the act of 1911. (Laws of 1911, p. 297.)

4. DRAINAGE—*Levee act itself authorizes assessment for maintaining and operating pumping plants.* Where the erection and operation of a pumping plant become necessary for the complete and successful drainage of the district, the Levee act, by necessary implication, authorizes the erection of a pumping plant and its operation; but the money for operating the plant can only be secured through the annual assessment of benefits, which amount must be determined as provided in sections 17½ and 26½ of said act. (*Hartwell Drainage District* v. *Mickelberry,* 257 Ill. 509, explained.)

CARTER and DUNN, JJ., dissenting.

APPEAL from the County Court of Pike county; the Hon. PAUL F. GROTE, Judge, presiding.

WILLIAM MUMFORD, and JAMES H. MATHENY, for appellants.

W. E. WILLIAMS, and A. CLAY WILLIAMS, for appellees.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

The McGee Creek Levee and Drainage District was organized in the county court of Pike county September 11, 1905, under the statute commonly known as the Levee act. The necessary improvements, including a pumping plant, were thereafter constructed at a cost of $190,000. On September 10, 1912, the commissioners of the district filed their petition in the county court setting forth that these improvements did not properly drain a considerable portion of the district and other facts showing the necessity for further work and an additional pumping plant. The petition asked that an assessment of $60,000 be spread for

the additional work required. Subsequently, on October 7, 1912, an amendment to the petition was filed, setting forth the necessity for annual assessments for maintaining, operating and keeping in repair the pumping plant already in operation and the additional pumping plant to be thereafter constructed. Objections were filed by appellants, who are land owners in the district, which were overruled. Judgment was entered levying a special assessment of $60,000 according to the prayer of the original petition, and an annual assessment of $11,000 was extended against the lands of the district for the purpose of maintaining and operating the pumping plant theretofore constructed and the one proposed to be constructed. This appeal was taken from that judgment.

These proceedings were had under an act approved May 13, 1905, as amended by an act approved May 20, 1907, and as further amended by an act approved June 7, 1911, and entitled, "An act to provide for the erection, maintenance and operation of pumping plants in certain drainage and levee districts and to legalize and validate former proceedings, bond issues, indebtedness and expenditures in regard to, on account of, or with a view to the erection, maintenance and operation of such pumping plants." (Laws of 1905, p. 197; Laws of 1907, p. 283; Laws of 1911, p. 297.) The validity of this act is questioned. It is contended that it is not authorized by the amendment to section 31 of article 4 of the constitution, adopted by vote of the people in 1878, and that it is also in violation of section 13 of article 4 of the constitution, which provides that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act."

That part of the act as amended in 1911 which it is claimed is not authorized by said section 31 of article 4 of the constitution provides that one or more pumping plants may be erected, maintained and operated by the district

with the approval of the county court. Said amendment to section 31 of article 4 of the constitution is as follows:

"Sec. 31. The General Assembly may pass laws permitting the owners of lands to construct drains, ditches and levees for agricultural, sanitary or mining purposes, across the lands of others, and provide for the organization of drainage districts and vest the corporate authorities thereof, with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this State, by special assessments upon the property benefited thereby."

This is the only section of the constitution which it can be claimed authorizes the passage of an act for the erection, maintenance and operation of pumping plants in levee and drainage districts. In their contention that this section does not authorize the operation of a pumping plant appellants rely solely upon *McChesney* v. *Village of Hyde Park,* 151 Ill. 634.

In 1885 a statute was enacted authorizing cities and villages to construct, maintain and keep in repair drains, ditches, levees, dykes and pumping works for drainage purposes by special assessments on the property benefited thereby. In *Village of Hyde Park* v. *Spencer,* 118 Ill. 446, the constitutionality of that act was challenged, and we held that the act of 1885 was a valid enactment, and that section 31 of article 4 authorized the passage of an act vesting the corporate authorities of cities and villages with power to construct, maintain and keep in repair not only ditches, drains, levees and dykes, but pumping works as well, for drainage purposes, by levying special assessments upon the property benefited, upon the ground that that section of the constitution contained a general grant of power which carried with it, by necessary implication, all other powers necessary to make the general grant effective and to accomplish the results intended. In *McChesney* v. *Village of Hyde Park, supra,* the former holding of the power to

construct and maintain ditches and erect pumping works by special assessments upon the property benefited was adhered to, but it was there held that a city or village could not pass a valid ordinance for a special assessment to operate or defray the running expenses of pumping works in connection with a drainage system, but that such funds must be raised by general taxation, as a part of the current expenses of the village. It is now insisted, under the holding in the *McChesney case,* that while the legislature had the power to enact a statute for the erection of pumping plants in drainage districts, it is not empowered by the constitution to enact a law providing for the operation of such pumping plants by special assessments on the lands benefited. Such a situation would, indeed, be anomalous, and it would be a strange construction to put upon this section of the constitution that it provided for the erection of a pumping plant which must of necessity remain inoperative and ineffective. The only means possessed by a drainage district for raising funds for the maintenance of the district and for the operation of its pumping plant is by special assessments upon the lands benefited. The holding that under this section of the constitution provision may be made for the erection of pumping plants for levee and drainage districts is based on sound reasoning. A levee constructed around a drainage district will retain the water which naturally accumulates within the district as effectively as it will prevent the water coming in from the outside. Pumping plants are therefore necessary adjuncts to the levees and ditches of many districts, but without the power to operate them they would not only be useless but the maintenance of such districts would be of no benefit whatever. If the general grant of power in this section of the constitution is, as has been said in numerous cases, unrestricted in its terms, and carries with it, by necessary implication, all other powers necessary to make the general grant effective and to accomplish the re-

sults intended, it certainly carries with it the power to pro-
vide for the operation of pumping plants as well as for
their erection. The holding in *McChesney* v. *Village of
Hyde Park, supra,* should not be held to apply to drain-
age districts organized under the Levee act, where the only
method given for the raising of money necessary to main-
tain and operate the works of the district is by special as-
sessments on the property benefited. In the *McChesney
case, supra,* it was pointed out that the village of Hyde
Park had other means of procuring the money to meet the
expense of operating its pumping plant, and what was there
said should be considered only in connection with the facts
in that case. That the court appreciated that a different
situation would be presented in the case of such a drainage
district as the one here involved is evident from the fol-
lowing language in the opinion: "For in the case of ordi-
nary drainage districts formed for agricultural purposes,
if pumping works and machinery were used and labor in
operating them required, it would be difficult to see how,
in the absence of power to make special assessments upon
the property benefited, the running expenses of the system
adopted and the cost of operating the machinery and pump-
ing works could be paid. But no such difficulty arises un-
der the act of June 22, 1885." The holding in the *McChes-
ney case* does not apply to such a case as this but should be
confined to such facts as were presented in that case. The
act is not in conflict with section 31 of article 4 of the
constitution.

The contention that the act is in conflict with section 13
of article 4 of the constitution is of a more serious char-
acter. The original act of 1905 consists of three sections.
The first section provided that whenever the commission-
ers of any district theretofore or thereafter organized un-
der the Levee act should deem it necessary to erect, main-
tain and operate one or more pumping plants, they might,
with the approval of the county court, "out of the funds

raised, or to be raised, by special assessments on the lands
of such district, and as a part of the drainage and levee
work of the district, erect, maintain and operate one or
more such pumping plants in such district." The second
section legalized and validated all proceedings theretofore
had for the erection, maintenance or operation of pumping
plants and all bonds issued and indebtedness incurred there-
for. The third section consisted of an emergency clause.
By the act approved May 20, 1907, section I was amended
by adding thereto the following: "And for the purpose
of maintaining and operating such plants, together with
the necessary repairs of the drains, ditches and levee of
the district, as shown by the report of the commission-
ers made each year to the July term of the court as now
provided by law, the court may approve and order such
amount thereof as may be shown to be necessary to be col-
lected as an assessment upon the lands of the district for
the current year, which amount shall not require a rate of
more than 60c upon each acre' of all the lands of the dis-
trict for such year." By the act approved June 7, 1911,
the said section I was further amended to read, that when-
ever the drainage commissioners shall deem it necessary
that one or more pumping plants be erected, they may,
with the approval of the county court, out of the funds
raised or to be raised by special assessment, and as a part
of the drainage and levee work of the district, "erect, main-
tain and operate one or more such pumping plants in such
district, and for the purpose of maintaining, operating and
keeping in repair such plant or plants along with the levees,
ditches and other works of such district, the annual amount
of benefits levied and assessed against the lands of such
district shall be in such amount as the county court in
which said district is organized and which has jurisdiction
over the said district shall find will accrue to the lands of
the said district by the maintenance and operation of the
ditches, levees, pumping plant or plants and other works of

said district, in accordance with the provisions of the said act entitled,"—here giving the title of the Levee act. Then follows a clause repealing section 1 of the act of 1907, which, in turn, is followed by a proviso that the act shall apply only in cases "where said drainage districts have or have at the inception of their organization, and keep and maintain pumping plants or stations."

Section 1 of the act of 1905, and each of the amendments thereto, in order to identify the drainage commissioners authorized to take advantage of the provisions of the act, referred to them as the commissioners of any drainage and levee district heretofore or hereafter organized under an act entitled "An act to provide for the construction, reparation and protection of drains, ditches and levees," etc., giving the complete title of the Levee act, together with the various dates of amendments thereto.

The act in question does not purport to amend the Levee act so far as the title indicates or the contents of the act show. It professes to be an independent act of legislation upon the subject of drainage. It is of no consequence, however, that the act does not expressly profess to amend the Levee act. If, in fact, it makes changes in the various sections of the Levee act, substituting provisions, adding new ones and mingling the new with the old on the same subject, so as to make of the old and the new a connected piece of legislation covering the same subject, the later act must be considered an amendment of the former. *People* v. *Knopf,* 183 Ill. 410; *Badenoch* v. *City of Chicago,* 222 id. 71; *O'Connell* v. *McClenathan,* 248 id. 350.

In *People* v. *Wright,* 70 Ill. 388, *People* v. *Knopf, supra,* and other cases, we have taken occasion to quote with approval the statement of Judge Cooley in *People* v. *Mahoney,* 13 Mich. 484, as to the ground of this constitutional provision, as follows: "The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived

in regard to their effect, and the public, from the diffi-
culty in making the necessary examination and comparison,
failed to become apprised of the changes made in the laws.
An amendatory· act which purported only to insert certain
words, or to substitute one phrase for another in an act
or section which was only referred to but not re-published,
was well calculated to mislead the careless as to its effect,
and was, perhaps, sometimes drawn in that form for that
express purpose.   Endless confusion was thus introduced
into the law, and the constitution wisely prohibited such
legislation.   But an act complete in itself is not within the
mischief designed to be remedied by this provision and
cannot be held to be prohibited by it without violating its
plain intent."

The act of 1905 was clearly an attempt to amend the
Levee act.   It provided that pumping plants should be
erected, maintained and operated out of funds raised or to
be raised by special assessments on the lands of the dis-
trict, and that they should be erected, maintained and op-
erated as a part of the drainage and levee work of the
district.   Without looking further into the Levee act, it is
apparent that the said act of 1905 attempted to amend sec-
tions 17½ and 26½ of that act.   Said section 17½ provides
for the assessment, by a jury, of the annual amount of
benefits which the lands within the district will sustain by
keeping the levee or ditch in repair after the construction
of the work in the district, which annual amount is re-
stricted so that it shall not, in the aggregate, amount to a
sum in any one year greater than would be produced by
a levy of thirty cents per acre on all the lands within the
district.   Said section 26½ provides that the annual amount
of benefits shall be due on September 1 of each year; that
the court shall require a report from the commissioners of
the condition of the levee or ditch at its July term of each
year, together with their estimate of the amount necessary
to keep the levee or ditch in repair, and that if the court

shall find that a less amount will be required for such ensuing year than the whole amount of the assessment for that year then it shall fix the amount to be paid, and only that amount shall be collected and the excess shall be remitted, provided that the amount to be collected shall not, in the aggregate, amount in any one year to a sum greater than would be produced by a levy of thirty cents per acre on all the lands within the district. As will be hereinafter pointed out, the annual assessments provided for in said sections 17½ and 26½ of the Levee act may be applied to the payment of the expenses of operating a pumping plant under the implied powers conferred by that act. Said sections 17½ and 26½ do not expressly authorize such use of the annual assessments, however, and the effect of the said act of 1905, if valid, was to make express and explicit that which was theretofore necessarily implied. By thus ingrafting said act of 1905 upon the Levee act said sections 17½ and 26½ are so amended as to expressly authorize the expenditure of a portion of the annual assessments of benefits for the operation of pumping plants as well as for the repair of the levees and ditches. As it was purely an amendatory act and was passed in violation of section 13 of article 4 of the constitution it was invalid. The amendment of 1907 is a more flagrant violation of the constitution than the original act of 1905, as it amends said sections 17½ and 26½ of the Levee act by substituting in the restriction therein placed upon the provision for the annual assessments for benefits the sum of sixty cents per acre for that of thirty cents per acre. That this was an amendment of those sections was afterwards appreciated by the legislature, and we find by amendments to said sections 17½ and 26½, approved and in force May 29, 1909, that while the amount of the annual assessments is still restricted, in the aggregate, to a sum no greater than would be produced by thirty cents per acre, it is provided that should any district organized under the act erect and maintain one or more pumping plants,

an assessment of annual benefits may be made as provided in section 1 of said act of 1905, as amended in 1907. The reference by title to the said act of 1905 as amended in 1907, in the amendment to said sections 17½ and 26½ of the Levee act did not give validity to this invalid act. The same unconstitutional features are preserved in the amendment of 1911 to the Pumping Plant act which so amends sections 17½ and 26½ as to remove all restrictions as to the amount which may be raised by annual assessments of benefits. The act of 1905, as well as the amendments thereto, having been thus passed in violation of the constitution, is invalid and afforded no authority for these proceedings.

We are of the opinion, however, that the Levee act itself affords ample authority for the erection and maintenance of pumping plants in levee and drainage districts. It has already been pointed out that it would be useless to construct levees around drainage districts without making provision for the elevation of the water over the same in order to remove it from the district. While the Levee act does not in express terms authorize the erection, maintenance and operation of pumping plants in connection with drainage districts, we have held that this statute plainly gives to drainage commissioners the power, under the direction of the court, to perform any work necessary for the protection and ample drainage of lands within the district, whether the work is to be done within or without the district, and to raise money by assessment for that purpose. (*Binder v. Langhorst,* 234 Ill. 583.) When the erection and operation of a pumping plant become necessary for the complete and successful drainage of the district, the Levee act, by necessary implication, authorizes the erection of the plant and its operation. The expenses for the operation of the plant, however, can only be secured through the annual assessment of benefits, which amount shall be determined in the method provided by said sections 17½ and 26½. This method was not followed in this proceeding,

and the annual assessment of $11,000 was therefore erroneously spread.

*Hartwell Drainage District* v. *Mickelberry,* 257 Ill. 509, is relied on as sustaining the validity of the Pumping Plant act. That case involved only the construction of the act, and the question of its validity was neither raised nor passed upon.

The judgment of the county court is affirmed as to the assessment of $60,000 for further work and the erection of an additional pumping· plant and is reversed as to· the annual assessment of $11,000, and the cause is remanded to the county court, with directions to sustain the objections as to the annual assessments.

*Reversed in part and remanded, with directions.*

CARTER and DUNN, JJ., dissenting.