(No. 32992.—

DAVID E. FULFORD, Appellant, *vs.* JOHN J. O'CONNOR *et al.*, Appellees.

*Opinion filed September 23, 1954.*

NATHAN WOLFBERG, CHARLES PRESSMAN, and CHARLES LIEBMAN, all of Chicago, for appellant.

JOHN J. MORTIMER, Corporation Counsel, of Chicago, (L. LOUIS KARTON, and ARTHUR MAGID, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Plaintiff, David E. Fulford, brought an action against John J. O'Connor and Anthony J. Brankin, to recover damages for false imprisonment and malicious prosecution. The jury returned a general verdict awarding the plaintiff $4000 damages. Upon a special interrogatory submitted to them, the jury also found specially that the conduct of the defendants was not "wilful and wanton, such as to show malicious intent on their part." Defendants moved for judgment notwithstanding the verdict upon several grounds, of which the only appropriate one is that the evidence was insufficient to support the verdict. Defendants

also moved for a new trial. The trial court granted the former motion and on April 10, 1953, entered judgment for the defendants. No disposition was made of the motion for new trial. On April 23 plaintiff moved to vacate the judgment for the defendants, on several grounds, of which we need only concern ourselves with the following: "2. The entry of said judgment notwithstanding the verdict was in violation of section 5 of article 2 of the Constitution of the State of Illinois and that plaintiff was thereby deprived of his right to trial by jury." This motion was overruled, and the plaintiff appeals. He brings his appeal here on the theory that the case involves a construction of the Illinois constitution. (Ill. Rev. Stat. 1953, chap. 110, par. 199.) Defendants challenge our jurisdiction of the appeal.

The basis of the plaintiff's contention is that in a jury trial at common law there was no such thing as a motion for judgment notwithstanding the verdict which raised the question of the existence of evidence to sustain the verdict. A motion by that name existed, but it was available only to the plaintiff, and then only upon the basis of an insufficiency in the defendant's pleadings.

Authorization for the trial court to enter judgment *n.o.v.* for the defendant on the ground that plaintiff's evidence is wholly insufficient to go to the jury is found in section 68 of the Civil Practice Act and Rule 22 of this court. (Ill. Rev. Stat. 1953, chap. 110, pars. 192, 259.22.) Section 68(3)a provides: "* * * if either party shall at the close of the testimony, and before the case is submitted to the jury, request the court for a directed verdict in his favor, the court may reserve his decision thereon, and submit the case to the jury * * *. If the court shall then decide as a matter of law that the party requesting the directed verdict was entitled thereto, the court shall enter its decision on the record and order judgment in accordance with such decision, notwithstanding the verdict

entered, * * *." Section 68(1) provides for entry of
judgment *n.o.v.* without a prior motion for directed verdict,
and Rule 22 states: "The power of the Court to enter
judgment notwithstanding the verdict may be exercised in
all cases where, under the evidence in the case, it would
have been the duty of the Court to direct a verdict without
submitting the case to the jury."

The plaintiff apparently concedes that these provisions
authorize the action of the trial court here. He did not
at any point below challenge their validity, and he expressly
states that he does not base this appeal upon the supposed
invalidity of a statute. Our jurisdiction therefore attaches,
if at all, because the case involves a construction of the
constitution.

Defendants assert (quoting from *Perlman* v. *Thomas
Paper Stock Co.* 378 Ill. 238, 241,) that "Where a judg-
ment or decree is attacked on the ground that its enforce-
ment will deprive the one against whom it is sought to be
enforced of some constitutional right, as, the right of trial
by jury, or the taking of property without due process of
law, etc., no constitutional question is presented to author-
ize a direct appeal to this court. The question involved in
such case is the validity of the judgment or decree and
not a constitutional question within the meaning of the
statute authorizing appeals direct to the Supreme Court."

The formula thus invoked is a familiar one. (See:
*e.g., Cooper* v. *Palais Royal Theatre Co.* 320 Ill. 44, 49;
*Albrecht* v. *Omphghent Township,* 324 Ill. 200, 202-203.)
Properly understood, however, it does not defeat jurisdic-
tion of this appeal. It is, of course, clear from the lan-
guage of the constitution and of the statute conferring
direct appellate jurisdiction on this court that we are not
limited to considering the validity of statutes to the exclu-
sion of constitutional issues which arise otherwise. (See:
Ill. Const., art. VI, sec. 11; Ill. Rev. Stat. 1953, chap. 110,
par. 199.) Our jurisdiction, however, is not defined in

terms of the mere presence of constitutional questions, or of the violation of constitutional provisions. It requires that "a construction of the constitution" be involved. Consequently we decline to review cases raising propositions which have already been settled adversely to the appellant, (see *First Nat. Bank* v. *Village of South Pekin,* 371 Ill. 605; *O'Connor* v. *Rathje,* 368 Ill. 83,) and similarly we do not customarily entertain a direct appeal merely to correct the court below when it has allegedly ignored or misconstrued a constitutional provision whose main lines have already been drawn by our decisions. ( See *Saxmann* v. *Allen,* 410 Ill. 31; *People* v. *Savanna Lodge,* 407 Ill. 227; *People* v. *Martens,* 338 Ill. 170; *cf. Diversey Liquidating Corp.* v. *Neunkirchen,* 370 Ill. 523; *People* v. *Martin,* 382 Ill. 192.) It is this consideration which the rule invoked by defendants is intended to express.

In the present case, however, we do not regard plaintiff as contending merely that the trial court erred in entering judgment *n.o.v.* because there was sufficient evidence to go to the jury. That, of course, would not involve a construction of the constitution. His objection is to the existence of any power in the trial court to enter such a judgment. Defendants suggest that in any event the question raised has already been settled. It is true that past decisions have assumed that trial courts possess the power which is here challenged, but the question has not in fact been squarely passed upon here. We hold, therefore, that we have jurisdiction of the appeal. *Diversey Liquidating Corp.* v. *Neunkirchen,* 370 Ill. 523.

We have recently had occasion, in *Olson* v. *Chicago Transit Authority,* 1 Ill. 2d 83, to describe the scope of our constitutional provision guaranteeing trial by jury. In upholding the power of the Appellate Court to pass on the weight of the evidence upon reversing a judgment entered upon a verdict and remanding for a new trial, we pointed out that the constitutional provision relates to the

substance of the right rather than the incidents of its exercise, and that the substance relates to the allocation of power between judge and jury. (1 Ill. 2d 83, 85-86.) This principle has even more forceful application to the present case. It is true, as plaintiff points out, that at common law a defendant could not avail himself of a motion for judgment notwithstanding the verdict. So far as he wished to attack the sufficiency of plaintiff's pleadings, he made a motion in arrest of judgment. (See Millar, Civil Procedure of the Trial Court in Historical Perspective, pp. 323-325.) Of course a mere change in nomenclature does not violate the constitutional guarantee. Plaintiff's real objection is to the fact that the court, under whatever label, is empowered to set aside the verdict of a jury without ordering a new trial. In this State it has long been recognized that a judge may remove a case from the jury by directing a verdict if the evidence for the party opposing such action, taken most favorably to him, wholly fails to support a material allegation of his claim or his defense. (See *Poleman* v. *Johnson,* 84 Ill. 269; *Frazer* v. *Howe,* 106 Ill. 563; *cf. Commercial Ins. Co.* v. *Scammon,* 123 Ill. 601, 605-606.) A similar power existed at common law in England. (See Millar, *op. cit. supra,* pp. 297-300.) At common law, however, this action of the trial court had to be taken before the verdict was returned, and a verdict once returned could not be set aside without granting a new trial. See *Slocum* v. *New York Life Ins. Co.* 228 U.S. 364; but *cf. Baltimore and Carolina Line, Inc.* v. *Redman,* 295 U.S. 654, 659-660.

Section 68 of the Civil Practice Act and Rule 22 of this court remedy this gap in common-law procedure by permitting the trial court to reserve judgment on a motion for directed verdict, and by allowing a motion for judgment notwithstanding the verdict to be made after a verdict has been returned. Rule 22 states, and we have repeatedly pointed out, however, that the duty of the trial court in

passing upon that motion is precisely the same as that which governs the common-law motion for directed verdict. (See, *e.g.*, *City of Monticello* v. *LaCrone*, 414 Ill. 550, 555; *Weinstein* v. *Metropolitan Life Ins. Co.* 389 Ill. 571, 576; *Merlo* v. *Public Service Co.* 381 Ill. 300, 311-312.) "The question presented by a defendant's motion for a directed verdict in an action at law is whether there is any evidence fairly tending to prove the cause of action alleged or fact affirmed, and the court does not, on such motion, weigh the evidence or consider its preponderance. [Citations.] No contradictory evidence, or other evidence of any kind or character, will justify a directed verdict or a judgment for defendant notwithstanding the verdict, except uncontradicted evidence of facts consistent with every fact which the evidence for the plaintiff tends to prove, but showing affirmatively a complete defense." (*Hughes* v. *Bandy,* 404 Ill. 74, 79.) Plaintiff's contention thus reduces to the proposition that the trial court may withdraw the case from the jury before verdict, but not afterward. This is obviously not a change in the substance of the right to trial by jury.

Plaintiff cites the case of *Slocum* v. *New York Life Ins. Co.* 228 U.S. 364, where it was held that an appellate court could not reverse a judgment on the verdict without remanding for new trial even though the state of the evidence was such as to have made the denial of a motion for directed verdict erroneous. The decision there is, of course, not binding upon us, since it is based upon the seventh amendment to the United States constitution, and it has, moreover, been all but overruled on this point by subsequent decisions of the Supreme Court. See *Baltimore and Carolina Line, Inc.* v. *Redman,* 295 U.S. 654; *cf. Berry* v. *United States,* 312 U.S. 450, 452-453; Rule 50(b), Federal Rules of Civil Procedure; see also *Aetna Ins. Co.* v. *Kennedy,* 301 U.S. 389; *Lyon* v. *Mutual Benefit Health & Accident Ass'n,* 305 U.S. 484; *Montgomery*

*Ward & Co.* v. *Duncan,* 311 U.S. 243; *Johnson* v. *New York, New Haven & Hartford Railroad Co.* 344 U.S. 48.

The principle announced in the *Slocum case,* furthermore, has not been followed in this State, for we have stated that an Appellate Court could constitutionally reverse without remanding where the trial court would have been justified in directing a verdict but refused to do so. (*Mirich* v. *Forschner Contracting Co.* 312 Ill. 343; *Commercial Ins. Co.* v. *Scammon,* 123 Ill. 601.) If such a power may validly be given to a court of review, it would be anomalous to deny it to a court of first instance. We hold, therefore, that the power to enter judgment notwithstanding the verdict on the ground that the plaintiff's evidence wholly fails as a matter of law to establish his claim is not a violation of article II, section 5.

We thus come to a consideration of whether the trial court was correct in entering its judgment for defendants. The facts are largely uncontroverted.

On April 6, 1949, plaintiff was employed as an automobile mechanic by a motor transport company. On the night of April 5, a burglary had been committed on the premises of another company, where plaintiff had been employed until a month before. The defendants, both officers in the Chicago police department, in the course of investigating this burglary, learned of plaintiff's prior employment. On the evening of April 6, around 9:30 or 10:00 o'clock, they visited his current place of employment, placed him under arrest, and removed him to a local police station, where an arrest slip was made out showing that he was being held "for investigation." He was detained in police custody without charges being preferred until the morning of April 8, when he was booked on a charge of disorderly conduct, and was released on $10 bail. He was brought to trial on that charge on April 11, in the municipal court, and was discharged as not guilty. Neither of the defendants appeared to testify against him. No

warrant was ever issued against him for burglary. On returning to his place of employment plaintiff was told that he was discharged because the employer did not care to have employees who were apt to be picked up by the police.

Plaintiff's claim of false imprisonment is based on two contentions. The first is that his arrest was made without probable cause, and contrary to the provisions of section 4, division VI, of the Criminal Code (Ill. Rev. Stat. 1953, chap. 38, par. 657,) which states that an officer may make an arrest without a warrant only when "he has reasonable ground for believing that the person to be arrested has committed it." The second is based on section 7, division VI, of the Code (Ill. Rev. Stat. 1953, chap. 38, par. 660,) which requires that "When an arrest is made without a warrant * * * the person arrested shall, without unnecessary delay, be taken before the nearest magistrate * * *." We will take up these contentions in order.

It is conceded by defendants, and could hardly be disputed, that their arrest of the plaintiff can be justified only if they had reasonable grounds to suspect him of the crime. Brankin was the only one of the defendants to testify. So far as his testimony is relevant to this issue, he stated that prior to interrogating plaintiff he had learned that the latter had previously been convicted and had served a term in the penitentiary. It is admitted by the plaintiff that he had a criminal record. In 1932 he was convicted of tampering with an automobile and served fifteen months at the St. Charles School. In 1934 he served four months in the House of Correction for a similar offense, and in the same year was sentenced to a term of one year to life for armed robbery and larceny of an automobile. He was paroled in 1942, and in 1945 received a restoration of citizenship from the Governor.

The witness testified further that upon arrival at plaintiff's place of employment, the officers were told by the foreman that plaintiff had been out of the garage during part of the previous evening on a repair job. The defendant Brankin also testified that as he was about to question plaintiff the latter was seen to make a telephone call. Immediately thereafter he was placed under arrest.

The plaintiff testified that on the previous night he had gone out on a service call with a pickup truck to repair a stalled truck. He stated that he had informed the officers that he had been out on a call the night before, and that this could be verified from his time card. Defendant Brankin testified, "I did not place Fulford under arrest until after he walked away from the telephone * * *. I placed him under arrest before I questioned him about what he was doing the night of April 5. * * * I arrested him as a burglary suspect. I know that there is no such charge but if we could have proved that he committed the burglary, then we had our man." He testified further that he did not attempt to verify any of the records which might confirm plaintiff's account of his whereabouts until the following morning. The manager of the garage which had been burglarized testified that the total weight of the articles stolen would run to 600-700 pounds and occupy a space of two feet high and ten feet long, and that it would take one man from thirty to fifty minutes to remove them.

It is our opinion that this evidence, taken most favorably to the plaintiff, was sufficient to go to the jury. The facts which the arresting officers relied on were plaintiff's criminal record, his former employment with the concern which had been robbed, his absence from the garage for a time on the night when the offense was committed, the fact that he then had the use of a truck, and the fact that the articles stolen were of such weight and bulk as not to be removable without the use of a truck. We are, of

course, aware that the existence of probable cause does not require the degree of evidence requisite to sustain a conviction. But it is equally clear that something more is required than the mere possibility that the plaintiff committed the crime. Here one of the defendants admits that he arrested the plaintiff before even questioning him, and that no effort to check the plaintiff's story was made until the following day. The question of probable cause is a question of fact for the jury, and we cannot say that the state of the evidence here was such as to remove the case from their consideration.

We are also of the opinion that the procedure followed by the defendants following the arrest constituted false imprisonment. It is uncontroverted that plaintiff could have been charged before a magistrate on the morning following his arrest. On this point, defendant Brankin testified: "We normally bring prisoners from the Chicago Lawn Station to the Stock Yards Station for trial, but we did not bring. Fulford to the Stock Yards Station on the morning of April 7 for the purpose of having him booked because we had not completed our investigation." With respect to the charge of disorderly conduct which was finally lodged against the plaintiff, Brankin testified: "Actually there had never been any disorderly conduct, but this is a technical charge. We bring a man in as a burglary suspect and we cannot prove it. We bring him to court on what we call disorderly."

This testimony, far from establishing a justification for plaintiff's detention, shows a flat disregard of the duty which the law imposes upon police officers. Our statutes are intended to insure that persons who are arrested shall not be detained without reasonable cause, and to afford them an opportunity to be released upon bail. The fact that there is as yet insufficient evidence to justify preferring charges against a criminal suspect is not an excuse for detention, but is precisely the evil which the statute is

aimed at correcting. We hold that on this branch of the case plaintiff was also entitled to have the verdict of the jury.

Plaintiff apparently considers that the count of his complaint charging malicious prosecution is removed from the case by virtue of the jury's special finding that there was no malice on the part of the defendants. He does not assign error in this connection, and we therefore have no occasion to pass upon it.

It follows, therefore, that the judgment notwithstanding the verdict was erroneous, and must be reversed. Defendants state that we must nevertheless remand the cause so that their motion for new trial may be passed upon by the trial court. It is of course clear that this court cannot pass upon the matters raised by that motion. (*Goodrich* v. *Sprague,* 376 Ill. 80.) The plaintiff suggests, however, that we may simply enter judgment on the verdict, on the ground that the appellees have waived their right to a new trial.

Rule 22 of this court provides that when a motion for judgment notwithstanding the verdict is disposed of the trial court shall also pass upon a motion for new trial, if any, made by the movant, and that the ruling thereon will be brought up for review upon the appeal from the judgment *n.o.v.* The rule also specifies, "Any party who fails to file a motion for new trial as herein provided shall be deemed to have waived the right to apply for a new trial." Ill. Rev. Stat. 1953, chap. 110, par. 259.22; *cf.* par. 192; see *Todd* v. *S. S. Kresge Co.* 384 Ill. 524; *Walden* v. *Chicago and North Western Railway Co.* 411 Ill. 378; *Langston* v. *Chicago and North Western Railway Co.* 398 Ill. 248; *cf. Eckhardt* v. *Hickman,* 2 Ill. 2d 98.

In this case, there was no failure to move for a new trial. Plaintiff suggests, however, that defendants waived their rights by failing to obtain a ruling from the trial court. We agree. The purpose of Rule 22 is to prescribe

a procedure which will avoid the circuity and delay which formerly prevailed, and we hold that under the rule a party must not only move for new trial but also obtain a ruling on his motion. *Todd* v. *S. S. Kresge Co.* 384 Ill. 524, 526; *Eckhardt* v. *Hickman*, 2 Ill. 2d 98, 100; *cf. Berg* v. *New York Central Railroad Co.* 323 Ill. App. 221, 391 Ill. 52, 55.

The judgment of the superior court is therefore reversed and the cause remanded to the superior court, with directions to enter judgment for the plaintiff upon the verdict.

*Reversed and remanded, with directions.*