(Nos. 34030 and 34170 Cons.—

THE NUTWOOD DRAINAGE AND LEVEE DISTRICT, Appellee and Appellant, *vs.* L. H. MAMER *et al.*, Appellants and Appellees.

*Opinion filed November 26, 1956—Rehearing denied Jan. 23, 1957.*

THOMAS, MULLIKEN & MAMER, of Champaign, and RICHARD W. HUSTED, of Springfield, for appellants in No. 34030, and for appellees in No. 34170.

G. RUSSELL SCHWARZ, of Jerseyville, (HAROLD G. TALLEY, of Alton, of counsel,) for appellee in No. 34030, and for appellant in No. 34170.

Mr. JUSTICE DAVIS delivered the opinion of the court:

In 1953 the Nutwood Drainage and Levee District, hereinafter called plaintiff district, filed, in the circuit court of Jersey County, a petition for the appointment of a receiver to collect delinquent annual maintenance taxes from L. H. Mamer and other members of the Mamer family for 1950, 1951 and 1952. This proceeding was brought pursuant to section 34c1 of the act of 1879 entitled, "An Act to provide for the construction, reparation and protection of drains, ditches and levees, across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," and hereinafter called the Levee Act. (Ill. Rev. Stat. 1953, chap. 42, par. 33b1.) The petition alleged the legal organization and existence of the drainage district; that defendants were owners of certain described lands

within the district, that in the following years the sums hereinafter set forth were duly levied against said lands as the annual maintenance tax of said district: in 1950 the sum of $3298.12; in 1951 the sum of $3664.43; and in 1952 the sum of $3664.43. The petition further alleged that all of said taxes are delinquent; that due diligence has been exercised for their collection; and that collection could be made through a receivership of the said real property. The answer of defendants admitted the legal organization of the district, and the ownership of lands within the district by defendants; admitted the attempt to collect and the refusal to pay the taxes, but the defendants denied "that said sum was duly levied against said lands and aver to the contrary that the annual amount of benefits so charged against said lands is illegal and without authority of law." The defendants further affirmatively alleged that the last assessment made by said drainage district against the lands in question assessed the total amount for annual benefits at $347.59, and that they have at all times been ready and willing to pay said amount for annual benefits. The plaintiff district filed a reply denying that the annual amount of benefits levied against said lands was illegal and without authority of law and that the total amount of annual benefits to the lands was $347.59 for each of the years 1950, 1951 and 1952. Plaintiff's motion for judgment on the pleadings was denied, and defendants' motion for judgment at the close of plaintiff's case was reserved. On June 18, 1956, the trial court dismissed the petition for want of equity finding from the evidence that no jury had been impaneled in the county court of Jersey County to ascertain the 1950, 1951 and 1952 annual maintenance benefits against the respective tracts of land of the defendants as set out in the petition filed therein, and that it was without authority to appoint a receiver for the collection of said benefits. From this final decree plaintiff appeals directly to this court. This appeal was given Docket No.

34170, and for purposes of convenience in this opinion will be referred to as the receivership case.

Prior to the entry of the decree in the receivership case, the plaintiff district instituted a proceeding in the county court of Jersey County, pursuant to section 17½ of the Levee Act (Ill. Rev. Stat. 1953, chap. 42, par. 21,) by which it sought an increase in the amount of the assessment of annual maintenance benefits to the lands within said district to the sum of $30,000. The commissioners of the plaintiff district filed the "Commissioners' roll of assessments of annual benefits and damages," reflecting the increased amounts. The objectors, being the same parties as the defendants in the receivership case, owned 41 tracts of land included in the district. After hearing, the jury lowered the assessment on the objectors' 41 tracts of land. The plaintiff district then moved for judgment notwithstanding the verdict as to all 41 tracts. The trial court granted the motion for judgment notwithstanding the verdict as to 26 tracts and confirmed the assessment as set forth in the "Commissioners' roll of assessment of benefits and damages" as to said tracts, but denied the motion for judgment notwithstanding the verdict and entered judgment on the verdict of the jury as to the other 15 tracts. From this final order of the county court, the defendants appealed directly to this court, where in oral argument, the plaintiff district waived cross error. This appeal was here given docket number 34030 and for purposes of this opinion is referred to as the assessment case.

Since these separate appeals involve the same parties and property, and require a construction of the Levee Act and a consideration of practice and procedure thereunder, we have consolidated the cases for oral argument and opinion.

The plaintiff district, which comprises approximately 10,000 acres of land in Jersey and Green counties along the Illinois River, was duly organized in 1906 under the

Levee Act. (Ill. Rev. Stat. 1953, chap. 42, par. 1 *et seq.*)
The defendants own about 1,075 acres of land within said
district. On May 30, 1907, a jury in the county court of
Jersey County ascertained by its verdict the annual amount
of benefits which each tract of land in said district would
sustain in keeping its levees and ditches in repair and in
operating its pumping plant, and judgment was entered on
said verdict by the county court of Jersey County. Under
this judgment the lands of the defendants were assessed
a total of $347.59 for annual maintenance benefits.

The plaintiff district is about 2½ miles wide and 8 miles
long, bordered on the east by river bluffs, on the north by
Macoupin Creek, on the west by the Illinois River and on
the south by Otter Creek. It has levees on the north, west
and south. A pumping plant is situated in the south end
of the district and there the drain water is pumped over
the levee into Otter Creek which flows westward to the
Illinois River. There is a range in elevation within the
plaintiff district from a low of 428 above sea level at the
pumping plant to a high of 445 feet in the northeast part
of the district. The Mamer lands lie generally in the north
part of the district near the north levee, and about 8 miles
from the pumping plant.

In the years 1946 through 1949, the commissioners of
the plaintiff district filed their annual financial report in
the county court of Jersey County showing the amount of
money collected and the manner in which it was expended,
together with their estimate of the amount necessary to
keep the levies, ditches, drains and other works of the dis-
trict in repair, to maintain and operate the pumping plant,
and to pay expenses for the following year. In each of
these years the county court entered an order reciting the
giving of due notice; approving the report and estimate;
finding the amount required as an assessment for the en-
suing year; and ordering that such an amount be made
the assessment on the lands within the plaintiff district.

The county court in those years further ordered that the commissioners and treasurer make and spread upon the district books and against the lands, in the proportionate amount as theretofore assessed, a tax levy for the ensuing year of the amount found required. In 1946 and 1947 the amount found to be required as a tax levy was $29,935 and in 1948 and 1949 the amount of the tax levy was $30,000. The amounts assessed against defendants for these years were paid, the last two years being paid under protest. The same assessment procedure was followed by the plaintiff district for 1950, 1951 and 1952. In each of these years the county court entered an order approving the commissioners' report and estimate, and ordering the commissioners to proceed to collect the entire amount, except in the year 1950 when the court found that the commissioners would need only 90 per cent of the annual estimate for such purposes. The 1950, 1951 and 1952 orders, however, differed from the prior orders in that they did not purport to find the amount required as a tax levy for the ensuing year, or order that said amount be made a tax levy on the lands.

The statutory procedure for assessing annual maintenance taxes for a drainage district is clearly set forth in the Levee Act. The commissioners shall prepare the "Commissioners' roll of assessment of benefits and damages," which they file with the clerk of the county court, and, upon notice as provided in the act, a jury is impanelled to pass upon all questions of benefits and damages to the land in said district. (Ill. Rev. Stat. 1953, chap. 42, par. 19.) The jury shall ascertain to the best of their ability and judgment the benefits which will accrue to the lands to be affected by the proposed work and, when directed by the court, may also ascertain the annual amount of benefits which each tract will sustain by keeping the levee, ditches, or other work in repair. After consideration of all evidence the jury by verdict shall find the total sum of

the annual amount of benefits which the lands will sustain by keeping said levees, ditches or other work in repair, which verdict shall be signed by the jury and filed in the court. The court shall then confirm said verdict and enter a judgment thereon and cause the same to be spread upon the records, and such judgment and verdict shall be a lien upon such lands. (Ill. Rev. Stat. 1953, chap. 42, par. 20.) In case an assessment of the annual benefit is not made at the time of the organization of the district, or is thereafter found to be insufficient, it may be provided for, or increased in the same manner as provided for the levying of additional assessments. (Ill. Rev. Stat. 1953, chap. 42, par. 21.) Such additional or increased assessments are made by the jury in the same manner as the original annual maintenance assessment. Ill. Rev. Stat. 1953, chap. 42, pars. 18, 19, 20, 21.

Drainage and levee districts are public corporations and have only such powers as the legislature has expressly conferred, or those which are necessarily implied. (*Prange* v. *O'Meara*, 368 Ill. 362; *Lower Indian Creek Drainage and Levee District* v. *Vallery*, 343 Ill. 49.) In general, the provisions of the act contemplate a hearing before a jury, after due notice, for the ascertainment of the annual maintenance benefits and a verdict of the jury assessing the amount of such annual benefits which each tract shall sustain by keeping the levees, ditches and other work in repair and the pumping plant in operation. This amount of annual benefits as so determined becomes due and payable annually on September 1. On or before July 1 of each year, the commissioners are required to file with the court a report of the condition of the levee or ditch, together with their estimate of the amount necessary to keep the levee or ditch in repair, and pay other incidental and necessary expenses. However, if the court shall find that the amount required as the annual benefit assessment for the ensuing year is less than the whole amount of the assessment of

annual benefits as theretofore ascertained by the jury, the court then fixes the lesser amount as the assessment for such year, and only that lesser amount is collected. (Ill. Rev. Stat. 1953, chap. 42, par. 24.) This is the only method by which the funds to defray the costs of maintenance, repair and operation of the pumping plant can be obtained. (*Brooks* v. *Hatch,* 261 Ill. 179.) The county court has no jurisdiction to make such original assessment; the statute placed this power in the jury. Neither can the court subsequently enlarge the amount of the annual assessment made by a jury. *Hammond* v. *Carter,* 161 Ill. 621; *Robeson* v. *People ex rel. Curry,* 161 Ill. 176.

It is clear from the record in the receivership case that the 1907 assessment was the only jury assessment of annual benefits against the lands of the defendants.

The plaintiff district, however, proceeds on the theory that its petition for a receiver complies with the requirements of section 34c1 of the Levee Act (Ill. Rev. Stat. 1953, chap. 42, par. 33b1,) and is "prima facie evidence of the facts therein stated;" that the answer of the defendants did not put in issue the validity of the assessment; and that the circuit court could not interfere with, restrain, or bar the collection of the assessment in issue. It further contends that there was a waiver of jury trial by the defendants and an estoppel.

Defendants contend that the plaintiff district cannot prevail unless there is an assessment roll supporting the annual maintenance benefits in the amount which plaintiff seeks to collect, and that the only assessment roll for annual benefits is the one confirmed in 1907.

We think the position of defendants is sound. Their answer, though general, puts in issue the validity of the $30,000 annual assessment, and the evidence shows that the only jury assessment of annual benefits against the defendants' 41 tracts of land was made in 1907 for the total amount of $347.59. The subsequent orders of the

county court were entered pursuant to the procedure by which the county court orders an assessment in the amount ascertained by the jury, or a percentage thereof, to be collected. (Ill. Rev. Stat. 1953, chap. 42, par. 24.) These orders could not validly assess annual benefits in excess of the 1907 jury assessment.

Plaintiff district argues that equity will not interfere with the collection of a drainage assessment unless it is unauthorized by law or levied on exempt property, and cites *Lackey* v. *Pulaski Drainage Dist.* 4 Ill.2d 72, in support of this contention. We do not consider the *Lackey case* in point. In the case at bar the plaintiff district seeks the aid of the court of equity in appointing a receiver to collect delinquent annual maintenance benefit assessments. Its petition alleged that the assessments in the amounts sought to be collected were duly levied for annual maintenance taxes and were delinquent. The allegation of the due levy of these assessments was put in issue by the defendant's answer. By dismissing the petition the circuit court did not interfere with the collection of the assessments but merely held that the allegations of the petition for the appointment of a receiver were not established by the proof. We think it elementary that the plaintiff district was not entitled to the extraordinary statutory relief unless the alleged delinquent annual maintenance benefits were validly assessed against the lands of defendants. The evidence clearly shows that there was no valid annual benefit assessment against the lands in question except the 1907 jury assessment in the annual sum of $347.59, which sum had been duly tendered by the defendants.

In an attempt to avoid this conclusion the plaintiff district argues that defendants waived a jury trial in the county court in connection with the levy of these respective annual benefits, and are now estopped from attacking the assessment. They base this argument on the fact that L. H. Mamer had formerly been a commissioner of this district

and that during his tenure in office a similar procedure was followed in assessing an annual maintenance benefit greater than that ascertained by the jury in 1907. They further argue that defendants waived a jury by paying an excessive assessment prior to 1950. We cannot agree with these contentions. The defendants had no part in spreading the assessments here in question; they have done nothing to mislead or prejudice the plaintiff district. It cannot be contended that they have waived a jury, inasmuch as the district has not, since 1907, taken the statutory steps to cause the ascertainment by jury of the annual maintenance benefits. Defendants have never had a day in court on the purported $30,000 maintenance assessments. Their voluntary payment of annual benefits prior to 1950 neither waived a jury, nor does it estop them from questioning the subsequent annual maintenance assessments. (*People ex rel. Mann* v. *Allen,* 317 Ill. 92.) We therefore conclude that the decree of the trial court in the receivership case should be affirmed.

During the pendency of the receivership case, the plaintiff district followed the statutory procedure in instituting proceedings to increase the annual maintenance assessment. The plaintiff district filed its "Commissioners' roll of assessments of benefits and damages," in the increased amount. Defendants filed objections as to their 41 tracts of land, contending that the assessments against such tracts were disproportionately high, and filed objection alleging that the assessments of all other land in the district were disproportionately low. In the said commissioners' roll, the total assessment was increased over the amount of the 1907 assessment, but was spread on the same percentage basis as that assessment, with some corrections for changes in acreage. The plaintiff district then rested its case. This constituted a *prima facie* case for the commissioners and the burden then shifted to the defendants to offer evidence

as to the amount of the benefits to the lands in question. Ill. Rev. Stat. 1953, chap. 42, pars. 19-22.

The defendants' evidence consisted primarily of the testimony of a drainage engineer who testified directly as to 15 of the 41 tracts. His testimony was based primarily on the theory that their annual benefit was less than that shown in the assessment roll because of the elevation of the land in question. Since the plaintiff district, in oral argument, waived cross error as to these 15 tracts, it is unnecessary for us to analyze his testimony to determine if the jury was justified, on the basis of that testimony, in lowering the assessment as to said 15 tracts of land. As to the remaining 26 tracts, however, defendants offered no testimony. Their only evidence was defendants' exhibit No. 1, a contour elevation map of the district prepared in 1902, which was rejected on the plaintiff district's objection. It did not show the levees of the district, but contained descriptive information through coloring and keys supplied by the witness who had not gone over the land and had no factual field knowledge thereof. We find no stipulation or waiver of the objection to the admission of this exhibit in evidence, and we believe that it was well within the discretion of the trial court to reject it.

We find no evidence in the record to sustain a verdict that the 26 tracts of land received less benefit than shown by the assessment roll. For that reason we feel that the trial court would have been clearly justified in directing a verdict for the plaintiff as to the 26 tracts. While the Levee Act under which these proceedings were conducted does not contain the specific authorization for a judgment notwithstanding the verdict, which we find incorporated in section 5—13 of the new Drainage Code, (Ill. Rev. Stat. 1955, chap. 42, par. 5—13,) we feel that the trial court would have been justified in directing a verdict for the plaintiff district since the defendants offered no competent

evidence. The duty of the trial court in passing on a motion for judgment notwithstanding the verdict is precisely the same as that which governs the common-law motion for directed verdict. (*Fulford* v. *O'Connor*, 3 Ill.2d 490, 495 and 496.) And it has long been recognized that when the plaintiff has established a *prima facie* case, a judge may take the case from the jury by directing a verdict for the plaintiff, if the evidence for the defendants taken most favorably to them wholly fails to support their defense. *Fulford* v. *O'Connor*, 3 Ill.2d 490; *Poleman* v. *Johnson*, 84 Ill. 269.

We feel that the theory and provisions of the Levee Act clearly contemplated judicial supervision of the jury verdict, and that the court would have been justified in directing a verdict for the plaintiff as to the 26 tracts of land. We therefore conclude that the county court, in the absence of any competent evidence to sustain defendants' defense, was justified in entering judgment for the plaintiff notwithstanding the verdict as to the 26 tracts of land. (Cf. Ill. Rev. Stat. 1955, chap. 110, par. 68.1.) Accordingly, the judgment of the trial court should be affirmed in the assessment case.

It is therefore our conclusion that the decree of the trial court in docket number 34170, the receivership case, should be affirmed, and the judgment of the county court in docket number 34030, the assessment case, should likewise be affirmed.

*Judgment and decree affirmed.*