In the Matter of the Petition of the Commissioners of McGee Creek Levee and Drainage District of the Counties of Pike and Brown, in the State of Illinois, to Increase Annual Benefits, Plaintiffs-Appellees, v. Ella Dennis, E. K. Dennis and Gladys Dennis, Defendants-Appellants.

Gen. No. 10,613.

Fourth District.

May 5, 1965.

Rehearing denied June 2, 1965.

Schimmel and Schimmel, of Pittsfield, for appellants.

Brice Irving, Grigsby & Irving, of Pittsfield, for appellees.

SMITH, J.

This is an appeal by certain objectors from an order of the county now circuit court of Pike County confirming an annual maintenance assessment roll after jury trial. Originally appealed to the Supreme Court, it was transferred to us for decision.

The controversy had its inception in a verified petition filed by the commissioners to increase the annual maintenance assessment from $19,394.63 to $37,979.90. The petition alleges that the smaller figure was established in July 1950; that costs have increased so that it is now insufficient to defray the costs of proper drainage; that a study shows the larger figure is required to pay existing indebtedness and to pay the operating expense of the district, and that the smaller amount has been inadequate for several years. Attached to the petition is a financial statement covering the period beginning September 1, 1962, and end-

ing February 28, 1963, and showing a cash balance of $6,311.55, liabilities of $13,726.96, and a deficit of $7,415.41.

Objections to the petition were filed by eleven objectors asserting that (a) the sum of $19,394.63 is adequate, (b) the financial report shows waste on the part of the commissioners, (c) there are no necessary outstanding obligations, and (d) that the petition does not show the additional funds are necessary or will benefit the landowners. It concluded with a prayer that the petition be disallowed and that "the order of the court declare at least for the ensuing year the annual maintenance assessments in the amount of $19,394.63 be and are adequate for the ensuing year." These objections were set for hearing, evidence was heard and pursuant to the provisions of ¶ 4–24, Ill Rev Stats 1963, c 42, the prayer of the petition was granted and the commissioners directed to spread an assessment roll. An order to this effect was entered on April 29, 1963. The assessment roll was filed on September 4—the objectors filed their motion to strike and dismiss the assessment roll. The motion was denied. A jury was duly impaneled; evidence was heard; the jury viewed the premises and returned their verdict into court. Judgment confirming the verdict was entered and motion for new trial was denied.

█ It is first urged that the trial court was without jurisdiction of the subject matter for the reason that the commissioners' petition to increase annual maintenance assessments did not state that the benefits to the land and other property exceed the costs to such lands and other property as required by Ill Rev Stats 1963, c 42, ¶ 4–19. This issue was first raised in the motion of the objectors to strike and dismiss the assessment roll after the preliminary order allowing the petition, approving the attached financial report and ordering the preparation and filing

of the assessment roll had been entered. The Commissioners countered with a motion for leave to amend their petition to include the statement that the benefits exceed the costs. Objectors resisted this motion and asserted that it now comes too late after the preliminary order. This position is rather effectively put to rest by ¶ 12–15, Ill Rev Stats c 42, which states:

"Any petition, report, assessment roll or other pleading may be amended as in other civil cases."

CPA ¶ 46, Ill Rev Stats c 110, paragraph 46 generally speaking permits amendments at any time before final judgment upon terms that are just and reasonable in any matter of form or substance in a pleading which may enable the plaintiff to sustain the claim for which it was intended to be brought. Unless therefore this allegation is jurisdictional, an amendment is proper before final judgment.

Objectors further assert that a petition to increase annual maintenance assessments cannot include unpaid bills previously incurred and existing at the time of the petition, but that such items must be included in a petition to levy an "additional assessment." Paragraph 5–1 of our Code provides for "original assessments," "annual maintenance assessments" or "additional assessments." It states that additional assessments "shall include assessments for . . . the payment of lawful obligations incurred by the district and for all other lawful purposes as set forth in this Act." It is to be noted that this issue was not raised in the objections to the petition, but in the motion to strike and dismiss the assessment roll after the entry of the interlocutory order directing the spreading of the assessment. It is thus charged that the failure to comply with the statute in this regard is jurisdictional, deprives the court of jurisdiction over

470

the subject matter and that it was without authority to proceed to a hearing on the assessment roll for this reason.

The Drainage Code is a comprehensive legislative format for the determination of the legal and factual issues arising from drainage problems. The commissioners invoked the jurisdiction of the court by filing a petition under ¶ 4–19 "(d) to increase an existing annual maintenance assessment." Paragraph 4–23 permits landowners or parties defendant to file objections "to the petition, or any portion thereof, or request that the petition be modified in any particular and . . . may be heard with reference thereto and introduce evidence in support thereof." This procedure was followed by the objectors except that the two issues now presented were not raised by the objectors and their prayer was that the annual maintenance assessment remain at $19,394.63 at least for the ensuing year. Paragraph 4–24 circumscribes the power of the court at the conclusion of the hearing. "If . . . the court finds that it is not necessary or advisable . . . to levy any proposed assessment, or finds that the cost thereof to the lands and other property in the district will exceed the benefits thereto, then the court shall dismiss the petition." The court did not dismiss the petition but directed that an order be prepared to "spread an assessment upon the prayer of the petition." This action of the court is pregnant with the thought that he necessarily found that the proposed assessment was necessary or advisable and that the cost to the district would not exceed the benefits to the district. Paragraph 4–24 further provides that "If the court finds it is necessary or advisable to do one or more of the things proposed and that the benefit resulting therefrom to the lands in the district exceed the cost to such lands, then the court shall also find . . . the amount of . . .

new or increased annual maintenance assessment to be levied . . . . Since no assessment roll was filed with the petition, the court then, in further compliance with this same section, directed the 'commissioners to file an assessment roll.' It is the manifest purpose of the procedure to this point to afford all parties the opportunity to be heard on all legal or factual barriers to the increase of the annual maintenance assessment district-wide. The decks are then cleared for the submission of two questions to the jury or to the court, if no jury is requested, to wit: (a) Does the cost to any specific property exceed its benefits and (b) is any specific property assessed more than its just proportion of the total assessment"? The objections and the hearing on the petition relate to determinations affecting the district as a unit. The objections and the hearing on the assessment roll relate to specific properties and the questions stated above which apply to specific properties. The objections to the petition furnish an opportunity to defeat the increased annual assessment roll in toto or to modify it by the court after hearing. The hearing on the assessment roll permits the owner of a specific property to defeat, diminish or modify the assessment as to his specific property. Two separate determinations must thus be made by the court and each rests on its own particular bottom. If the first determination is against the commissioners, the second determination is precluded and unnecessary.

▪▪▪ When the assessment roll was filed, the objectors first raised the jurisdictional questions here presented. Their objections are limited to the jurisdiction of the court over the subject matter. They thus limit us to the narrow issue of jurisdiction over the subject matter. In our judgment the trial court properly denied the motion to strike and dismiss the assessment roll on the ground assigned. We think

472

the amendment of the petition by the commissioners cured any defect in failing to allege that the benefits exceeded the costs. We think it is implicit that the court found that benefits exceeded the costs in ordering that the assessment be spread in the amount requested even though the order made no such specific finding. It is clear from the original petition that accrued bills were included in the petition to increase annual maintenance assessments. The authority of a district to incur indebtedness for current expenses to be paid for out of future assessments was recognized under a prior statute long ago and recently approved. Wood River Drainage & Levee Dist. v. Alton Box Board Co., 26 Ill2d 53, 186 NE2d 49. The evidence is clear that an increase in annual maintenance benefits will enable the district to return to a "pay as you go" basis. In any event, the opportunity to raise all of these questions was given by notice and a statutory hearing on the original petition. None of them undermine or destroy the court's jurisdiction of the subject matter. They are not jurisdictional. Turley v. Arnold, 384 Ill 158, 51 NE2d 176. In the hearing on objections to the petition, the objectors remained silent and inactive on the issue raised here. In so doing, in our judgment, they closed the gate on a consideration of these questions. They should have moved at the first opportunity to raise them. People v. Harvey, 396 Ill 600, 72 NE2d 345. Having permitted the entry of the order to spread the assessment roll without the objections raised here, the objectors have left only a consideration of whether the benefits to each exceed the cost to each and whether each is assessed more than his proportionate share of total assessments.

■■ On these questions, the objectors contend that, as to them the assessments are against the manifest weight of the evidence; as to certain given instructions

the jury was misguided, and as to certain refused instructions, the jury was wholly uninformed. In this area, our course is clearly chartered by our Supreme Court in this language.

> ". . . In cases of this character, where the evidence is conflicting and the jury views the premises and the verdict is within the range of the testimony, the court will not interfere with the finding of the jury as to the amount of benefits, unless there is something in the record showing that the jury was influenced by passion or prejudice or that there have been incorrect rulings by which the jury might have been misled. . . ."

Union Drainage Dist. No. 5 v. Hamilton, 390 Ill 487, 499, 61 NE2d 343, 348. It is at once apparent that, be the assessments "original," "additional," or "annual," they cannot be determined with the scientific exactitude of temperature or blood pressure. They necessarily rest upon conclusions reached from a consideration of known physical factors and data, and upon some factors more or less illusory upon which the minds of reasonable men might well disagree. The evidence before us is in sharp dispute in both areas. Suffice it to say that the verdict of the jury is within the range of the total testimony.

 The evidence shows an expenditure of $33,-663.46 in 1961 and $34,468.92 in 1962. The objectors' principal complaint is that their lands derive no benefit either from pumping or ditching and that too much was spent for this purpose. These questions were resolved against them in the objections to the petition. Once the order to spread the assessment is entered, the questions for jury determination are limited. Witnesses for the objectors testified that no benefit to them would be received from pumping or ditching and that

474

they were adequately drained through natural drainage. The engineer testified as follows:

"I testified we assessed the high lands of the District on a basis of 30 per cent maximum benefits.

"Q. How did you arrive at your percentage?

"A. We made a study of the high water of the Illinois River, and we found that since the origin of the District in 1909 there has been water from 447' and above 20 per cent of the years. In other words, twenty years out of 100, or 10 out of fifty, water would cover this land—the highest land in the district—if there were no levees; so we said that was 20 per cent benefit; then we attributed another 10 per cent to the propelling of the water; we felt they should pay some pumpage and benefit from ditches and other improvements—we came up with 30 per cent benefits. That is how we arrived at the 30 per cent figure."

The jury saw and viewed the property. The evidence is in sharp conflict. The verdict is within the range of the testimony. We cannot say that its verdict is against the manifest weight of the evidence. Union Drainage Dist. No. 5 v. Hamilton, 390 Ill 487, 61 NE2d 343.

■ Complaint is made of the refusal of the court to give the following instruction.

"The Court instructs the jury that every Objector, as owner of property is entitled to enjoy his property with such natural advantages as are derived from its situation in the District involved in this case. He is under no obligation to assist the owner of a servient estate or land of lower

elevation to get rid of the water flowing onto such lower land."

This same instruction was condemned in Turley v. Arnold, 384 Ill 158, 51 NE2d 176. Because of language in that case, some doubt was cast upon right of a landowner within a district to exercise private rights of drainage. This right is now preserved in the Code, Ill Rev Stats ¶ 12–2, with a limitation in these words, "except insofar as the drainage system of the district may vary from or be inconsistent with natural drainage." The instruction so offered is patently bad without reference in the instruction to the statutory limitation as related to the facts in the case and its refusal was not error.

Appellants object to commissioners' instruction No. 10 stating in substance that the burden is on the objectors to prove by the preponderance of the evidence not only that they were assessed more than their benefits or more than their proportionate share of the benefits, but also the amount that their assessments should be and unless they do this by a preponderance of the evidence, the jury would not be justified in lowering the assessment against the objections. Objectors given instructions 11, 13, and 22 accept this concept of burden of proof in the main by advising the jury that if they believed by a preponderance or greater weight of the evidence that any lands received no benefits, the jury should assess zero benefits and if they believed by the preponderance of the evidence that the amount was not as great as that set forth in the assessment roll, then their verdict should disclose the amount of benefits, if any, to be assessed.

 Objectors contend that these instructions shift the burden of proof to the objectors and thus the case went to the jury on an erroneous theory.

 

The burden of proof is upon whom to prove what in a drainage assessment case? The final assessment roll is the assessment roll of the jury. Hadley Creek Sub-Dist. v. Chicago, B. & Q. R. Co., 284 Ill 354, 120 NE 281; Kickapoo Drainage Dist. v. City of Mattoon, 284 Ill 393, 120 NE 256. The Drainage Code, Ill Rev Stats c 42, ¶ 5–10, makes the commissioners' roll the claim of the district against the several tracts, makes out a prima facie case for the district and is taken by the jury to the jury room. Once the commissioners' roll is received into evidence, it constitutes a "prima facie case for the commissioners and the burden then shifted to the defendants to offer evidence as to the amount of the benefits to the lands in question" and, if no evidence is offered by the objectors, the court may properly direct a verdict in favor of the district. Nutwood Drainage & Levee Dist. v. Mamer, 10 Ill2d 101, 110, 139 NE2d 247, 253. If competent evidence is offered on behalf of the objectors, then the commissioners' roll loses its prima facie character, but par 5–10 of the Drainage Code "casts the burden of proof upon the one who asserts that the certificate or the assessment roll is not correct." Commissioners of Drainage Dist. No. 1 v. Goembel, 383 Ill 323, 50 NE2d 444. From a reading of the cases cited therein, we are of the opinion that the term "burden of proof" is somewhat enigmatic in a drainage assessment case. If it means the burden of going forward with and producing evidence, it is clear from the decisions and the statute that the filing of the commissioners' roll casts that burden on the objectors.

 If burden of proof means the burden of persuasion, a different problem arises. Objector would have us apply the "bursting bubble" theory to the commissioners' roll. That theory as applied to presumptions merely means that where any evidence

contrary to the presumed fact is introduced, the presumption vanishes. Lohr v. H. Barkmann Cartage Co., 335 Ill 335, 167 NE 35. This theory has been criticized. "A presumption should be given the effect of placing on the opposite party the burden of persuasion of the nonexistence of the presumed fact. To this extent the statement that the burden of proof never shifts must be qualified." Cleary, Handbook of Illinois Evidence, 2nd Ed Par 4.15, page 62. We consider this philosophy particularly apt in a drainage case. There is little doubt but that the commissioners' roll occupies the center of the stage in a drainage assessment case. The statute permits the jury to take it with them to the jury room. We have already observed that it is the duty of the objectors to show that it is not correct as to their lands. We know of no way whereby they can show their assessment incorrect without at the same time showing what it should be. To this extent, the burden of proof does shift.

The necessity for the assessment has already been determined as a matter of law by the court. The inquiry of the jury and the issue before it was to find by its verdict from all of the evidence, the amount of benefits to each specific property which must not exceed the cost and which must not be more than its just proportion of the total assessment. Within these limitations, the finding may be from zero benefits on up. The statutory purpose is to find a fair and just assessment for each property. This is the purpose of the trial and the duty of the jury. The jury must be persuaded that their roll does just that. If the commissioners' roll is incorrect, the burden rests with the objectors to show that fact and the extent to which it is incorrect as to each specific property

of the objectors. In our judgment the jury was properly instructed on the issues and the burden of proof.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

TRAPP and CRAVEN, JJ., concur.