*In re* SALINE BRANCH DRAINAGE DISTRICT (Saline Branch Drainage District, Plaintiff-Appellee, v. Urbana & Champaign Sanitary District, Defendant and Objector-Appellant (The City of Urbana, Defendant)).

Fourth District   No. 4—88—0041

Opinion filed July 28, 1988.—Rehearing denied August 25, 1988.

J. C. Ermentrout, of Champaign, for appellant.

Mary A. Perlstein, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

The instant case involves an appeal from a proceeding under the Illinois Drainage Code (Code) (Ill. Rev. Stat. 1987, ch. 42, par. 1—2 *et seq.*). The record reveals that defendant, the Urbana and Champaign Sanitary District (Sanitary District), plaintiff Saline Branch Drainage District (Drainage District) and the intervenors City of Urbana and City of Champaign (cities) entered into an indenture on January 31, 1949. Pursuant to the indenture, the parties recognized the jurisdiction of the Sanitary District over the Boneyard and its existing open tributaries, draining such lands, and over the rights-of-way, improvements, drains and drainage structures in the Boneyard. Also pursuant to the indenture, the Sanitary District accepted "full and complete responsibility for the improvements and maintenance of the Boneyard and its existing open tributaries, and it [agreed] to provide and keep in repair an adequate system of storm water drainage therein and to correct any sanitary and unhealthful conditions existing therein." Additionally, the Sanitary District was authorized and empowered to perform work in the Drainage District's main open ditch "as may be necessary to obtain a proper outlet for the storm water drainage system to be constructed by the Sanitary District." The Sanitary District

agreed that "if, in order to obtain a proper outlet for the storm water drainage system to be constructed by it, it is necessary to perform work in the main open ditch of the Drainage District, it will perform such work at its own expense, including the cost of acquisition of any additional right-of-way and any damage to private or public property."

As a part of the agreement, lands lying within the boundaries of both the Drainage District and the Sanitary District were to be detached from the Drainage District and would cease to be a part of it. The Sanitary District agreed that it was an adjoining drainage district within the meaning of "An Act to enable adjoining drainage districts to connect their ditches ***" (Adjoining Drainage District Act) (Ill. Rev. Stat. 1949, ch. 42, par. 219) and agreed to pay "its proportion of the cost of any work or improvement performed by the Drainage District and the maintenance, operation and repair thereof, when such work, improvement, maintenance, operation or repair benefits the lands or any part thereof situated within the boundary of the Sanitary District."

On February 8, 1949, orders were entered by the circuit court of Champaign County approving the indenture and detaching from the Drainage District the lands lying within the boundaries of both the Drainage District and the Sanitary District.

On October 14, 1959, the Sanitary District entered into an "Agreement to Construct and Connect Drains" with the Drainage District and Beaver Lake Drainage District. Pursuant to the agreement, the Sanitary District was authorized to construct a diversion outlet storm sewer and open ditch through the drainage districts "to serve territory which lies within the original boundaries of the Saline District (a portion of which has heretofore been detached from the Saline District and placed under the jurisdiction of the Sanitary District by order of the County Court of Champaign County, Illinois." The Sanitary District also agreed that "it was liable to each District for its just proportion of the cost of the enlargement, improvement, maintenance, repair and operation of the main open ditches of the Drainage Districts, including the clearing and redredging thereof, such proportionate share to be determined or approved by the County Court of Champaign County, Illinois, under the terms and provisions of Article XI of the Illinois Drainage Code."

Then in 1974, an assessment for outlet rights and an annual maintenance agreement were agreed upon and entered on the Drainage District's assessment roll. The District agreed to pay $60,000 in additional benefits and entered into an "agreement in lieu of annual assessment to equal annual levy for first three years not to exceed

$5,000.00 and thereafter to equal annual levy not to exceed $2,500.00"

On March 2, 1984, the Drainage District filed a "Petition for Authority to Increase and Levy Annual Maintenance Assessments in the Main District and Establish and Levy Annual Maintenance Assessments in Subdistricts A and C." The Drainage District also filed the main district and subdistrict A and C annual maintenance assessment rolls at that time. The Drainage District's petition included a description of the annual maintenance work proposed to be performed and a request for the establishment of a maximum annual maintenance assessment in the main and the subdistricts.

On March 30, 1984, the Sanitary District filed its "Objections to Increase and Levy Annual Maintenance Assessments in the Main District and Subdistrict C." The objections were overruled by the circuit court in its order entered October 25, 1984, except for the issue of "whether the annual benefits received by the *** Sanitary District will exceed the cost of the assessments." The Sanitary District then filed its motion to reconsider the order overruling the objections and its application to set aside the 1949 indenture, which were denied by the court in its memorandum opinion filed June 21, 1985, and its order entered July 12, 1985. Among other things, the court found that since the previous orders had not been set aside, the indenture, the order approving the indenture and the order of detachment were still in effect.

On June 1, 1987, the cause was called for bench trial on the issue of benefits and the annual maintenance assessment. The Drainage District filed a motion *in limine* to bar the Sanitary District from calling an expert witness to testify on the issue of benefits to the Sanitary District as none had been disclosed pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220). The motion was allowed without objection and a written order was entered. The Drainage District's exhibits Nos. 1 through 12 and exhibits Nos. 24 through 34, which included the petition and the annual maintenance assessment rolls for the main district and subdistrict C, as well as other exhibits, were offered and admitted into evidence and the Drainage District rested its case. The Sanitary District then called Carl Garrison, the executive director of the Sanitary District, to testify. Garrison's testimony will be discussed where relevant to the issues presented. The Sanitary District then rested its case and the Drainage District moved for a directed verdict.

Thereafter, the circuit court directed a verdict in favor of the Drainage District, finding it had established a *prima facie* case on the assessment roll which was unrebutted. The court entered its written

order on July 6, 1987. In this order the court elaborated on its previous ruling, stating:

"The [Drainage District] had made a *prima facie* case that the annual benefits to be received by the *** Sanitary District in the amount of $50,000.00 in the Main District and $1,500.00 in Subdistrict C will exceed the cost of the annual maintenance assessments in said amounts in the Main District and Subdistrict C, and that said amounts are the proportionate share of the total annual maintenance assessments for the Main District and Subdistrict C to be borne by the *** Sanitary District, and, further, the court found that the *prima facie* case was not rebutted by the [Sanitary District]."

Thus, the court authorized the Drainage District to establish and levy annual maintenance assessments in the main district and two subdistricts in the following amounts: (1) main district—$112,424.28; (2) subdistrict A—$5,623.06; and (3) subdistrict C—$19,057.03. This included an increase in the annual maintenance assessment against the Sanitary District in the main district from $2,500 to $50,000 per year. It also included the annual maintenance assessment against the Sanitary District in subdistrict C of $1,500.

On July 22, 1987, the Sanitary District filed a motion to set aside part of the circuit court's order directing a verdict in favor of the Drainage District. The court denied this motion by written order dated December 18, 1987. The Sanitary District filed a timely notice of appeal.

The Sanitary District first contends that although the 1949 indenture in the case at bar did not include a termination date, the agreement was terminated at will by election of the Sanitary District, with notice to all other parties to the indenture. The Sanitary District therefore argues that the circuit court failed to construe and properly address the 1949 indenture and the court erred in finding the indenture was still in effect. The Sanitary District argues that the trial court improperly relied upon *Schallau v. City of Northlake* (1979), 82 Ill. App. 3d 456, 403 N.E.2d 266, in holding that an order issued by a court with jurisdiction over the subject matter and parties must be obeyed until it is set aside by the issuing court or a court of review. Next, the Sanitary District relies on this court's opinion in *In re Drainage District No. 1* (1982), 106 Ill. App. 3d 241, 435 N.E.2d 902, to argue that an order of approval need not be first set aside before determining the effect of a contract and enforcing it. The Sanitary District concludes that there is no need to set aside an order approving a contract merely because one of the parties to the contract

wishes to exercise a right granted by the contract's terms.

The Drainage District contends that the Sanitary District is required by contract and by statute to pay its proportionate share of the cost of benefits conferred on it by the work of the Drainage District. The Drainage District argues that the Sanitary District could not unilaterally terminate the 1949 indenture, which was approved by court orders. The Drainage District asserts that by terminating the agreement, the Sanitary District is attempting to avoid its obligation to pay its fair proportionate share of annual maintenance costs. The Drainage District further contends that the Sanitary District's reliance upon *In re Drainage District No. 1* (1982), 106 Ill. App. 3d 241, 435 N.E.2d 902 (*Cerro Gordo*), is misplaced. The Drainage District asserts that *Cerro Gordo* involved the interpretation and enforcement of an existing contract between the drainage district and the village, which had previously been approved by the court; it did not involve a question of setting aside the prior order of the court. Finally, the Drainage District contends that the trial court in the instant case properly relied on *Schallau v. City of Northlake* (1979), 82 Ill. App. 3d 456, 403 N.E.2d 266, for the proposition that "an order issued by a court with jurisdiction of the subject matter and the parties must be obeyed until it is set aside by the issuing or reviewing court."

We have reviewed the record together with the authorities cited by the parties and conclude that the Drainage District's argument is persuasive. The court below denied the Sanitary District's application on the ground that the previous orders approving the indenture and the detachment had not been set aside and, therefore, the order approving the detachment and indenture, as well as the indenture itself, were all still in effect. The court relied upon *Schallau v. City of Northlake* (1979), 82 Ill. App. 3d 456, 403 N.E.2d 266, and ruled that "an order issued by a court with jurisdiction of the subject matter and the parties must be obeyed until it is set aside by the issuing or reviewing court." An examination of *Schallau* and similar decisions demonstrates that the trial court's decision was correct.

■■ In *Schallau*, the defendant developer filed a petition for a writ of *mandamus* commanding the city to issue a building permit and record the ordinance of annexation. The developer simultaneously requested a rule to show cause why the city should not be held in contempt for not doing so. The city answered that the developer had failed to comply with city ordinances requiring connection with the city water and sewage systems and presentation of permits from the Metropolitan Sanitary District and the Department of Transportation. The circuit court held in favor of the developer, finding that the devel-

oper had complied with all conditions precedent to issuance of a building permit and recordation of the annexation ordinance, and ordering the city to do so. Shortly thereafter, the developer petitioned for a rule to show cause. The city responded that an application for leave to file a complaint in *quo warranto* was pending in another division of the circuit court and therefore requested that the court's order be stayed. The court nevertheless issued a rule to show cause. At the hearing thereon, the city presented uncontroverted testimony that the developer had not complied with all the city building code and ordinance requirements, but the court found the city and its officials in contempt and levied an escalating series of fines against them, conditioned on noncompliance with the *mandamus*. The appellate court reversed, holding that there was uncontradicted evidence that the developer had failed to comply completely with applicable ordinances and therefore it was error to award a writ of *mandamus*. In so holding, the court stated:

> "Although the court's order to issue a building permit was erroneous, an order issued by a court with jurisdiction of the subject matter and the parties must be obeyed until it is set aside. (*E.g., Faris v. Faris* (1966), 35 Ill. 2d 305, 309, 220 N.E.2d 210.)" *Schallau*, 82 Ill. App. 3d at 467, 403 N.E.2d at 274.

Further, in *Faris v. Faris* (1966), 35 Ill. 2d 305, 220 N.E.2d 210, the case relied upon by the *Schallau* court, the wife filed a petition in the circuit court of De Kalb County for writ of *habeas corpus* to secure from her former husband their three-year-old daughter. Upon the husband's failure to produce the child as ordered by the circuit court, he was adjudged in contempt and ordered committed to the county jail pending compliance. The supreme court held that the circuit court acted within its authority in finding the husband guilty of contempt and therefore affirmed its order. In so holding, the supreme court reasoned:

> "If the court had jurisdiction of the subject matter and of the parties to the proceeding, then its order must be obeyed until such time as it is set aside by the issuing or reviewing court. (*People ex rel. Titzel v. Hill*, 344 Ill. 246[, 176 N.E. 360].)" *Faris*, 35 Ill. 2d at 309, 220 N.E.2d at 212.

Finally, in *People v. Halprin* (1983), 119 Ill. App. 3d 922, 457 N.E.2d 1010, the defendant attorney openly disobeyed the circuit court's order and was held in contempt. The appellate court affirmed, reasoning that "even if defendant believed the trial court's order to be improper, she was obliged to obey it." *Halprin*, 119 Ill. App. 3d at

930, 457 N.E.2d at 1015-16.

■ The foregoing analyses demonstrate that the order approving the indenture and the order of detachment would have to be set aside before the Sanitary District could take steps to terminate the indenture. Further, the Drainage District correctly points out that the *Cerro Gordo* case is distinguishable from the case at bar. That case involved the interpretation and enforcement of an existing contract between the drainage district and the village which had been previously approved by the court. The case did not involve a question of setting aside the prior order of the court.

The remaining issue is whether the Drainage District established a *prima facie* case which was unrebutted. In the instant case, the circuit court directed a verdict in favor of the Drainage District, finding that the Drainage District had established a *prima facie* case as to the issue of benefits and that there was no countervailing evidence. The Sanitary District now challenges the court's ruling, arguing that Carl Garrison's testimony was sufficient to overcome the Drainage District's *prima facie* case. The Sanitary District argues that Garrison's testimony constituted a negative answer to the question, "[D]oes the cost to any specific property exceed its benefits?" as well as the question, "[I]s any specific property assessed more than its just proportion of the total assessment?" The Sanitary District further argues that as a result of Garrison's testimony, it was incumbent upon the Drainage District to offer additional evidence, as to the benefits showing it was rendered more productive, more accessible, or the market value substantially increased, and that the actual or intrinsic value was enhanced by the work done or to be done.

The Drainage District contends that it established a *prima facie* case which was unrebutted. The Drainage District argues that the Sanitary District had the burden of proving the amount of benefits which it received. The Drainage District relies upon *In re Petition of the Commissioners of Maple Creek Levee & Drainage District* (1965), 58 Ill. App. 2d 466, 207 N.E.2d 313, for the proposition that the burden of going forward with and producing evidence shifts to the objectors to show that the assessment roll of the commissioners is not correct and the extent to which it is incorrect. The Drainage District asserts that the Sanitary District failed to introduce evidence that the annual cost for the performance of annual work by the Drainage District would exceed the benefits to the Sanitary District and lands lying within its boundaries. Further, the Drainage District contends that Garrison's testimony, taken as a whole, merely indicates that the Sanitary District had no difficulty in the past 14 years in discharging

the effluent from its Urbana plant into the Drainage District's ditch. The Drainage District maintains there was no testimony by Garrison that the amounts of the assessments shown on the annual maintenance assessment rolls were incorrect as to the Sanitary District and no testimony as to what the correct amounts should be.

■ The Drainage District's argument on this issue is persuasive. Whenever the commissioners of a drainage district determine that it is necessary to levy an annual maintenance assessment for the performance of maintenance work within the existing annual maintenance assessment, the commissioners shall file a petition in the circuit court for the county in which the district is organized for the authority to levy or increase the assessment. (Ill. Rev. Stat. 1987, ch. 42, par. 4—19; *In re Fort Chartres & Ivy Landing Drainage & Levee District* (1985), 131 Ill. App. 3d 621, 476 N.E.2d 39.) The contents of the petition are governed by section 4—19 of the Code (Ill. Rev. Stat. 1987, ch. 42, par. 4—19). Here, the Drainage District filed such a petition, requesting the authority to increase and levy annual maintenance assessments in the main district and to establish and levy annual maintenance assessments in subdistricts A and C. In addition, the Drainage District filed the annual maintenance assessment rolls for the main district and subdistricts A and C.

Section 4—34 of the Code (Ill. Rev. Stat. 1987, ch. 42, par. 4—34) provides:

> "The commissioners of a drainage district are officers of the court and as such shall be under the control of the court. Whenever the commissioners, pursuant to any of the provisions of this Act, file a petition or report with the court and such petition or report is verified by a majority of the commissioners, the matters and things therein contained shall be presumed to be correct, and, when introduced in evidence in any such proceeding, shall make out a *prima facie* case for the district."

Further, section 5—10 of the Code (Ill. Rev. Stat. 1987, ch. 42, par. 5—10) provides in relevant part:

> "Original Assessments—Assessment Roll as *Prima Facie* Evidence. The assessment roll shall constitute the claim of the commissioners on behalf of the district against several tracts of land and other property and, when offered and admitted into evidence, shall make out a *prima facie* case on behalf of the district on all issues as to the amounts of benefits, damages and compensation."

■ The foregoing provisions demonstrate that once the district's petition and assessment rolls were received into evidence, that consti-

tuted a *prima facie* case and the burden then shifted to the Sanitary District to offer evidence as to the amount of the benefits to the lands in question. If no competent evidence was offered by the Sanitary District, the court could properly direct a verdict in favor of the Drainage District. (*Nutwood Drainage & Levee District v. Mamer* (1956), 10 Ill. 2d 101, 139 N.E.2d 247; *In re Petition of the Commissioners of McGee Creek Levee & Drainage District* (1965), 58 Ill. App. 2d 466, 207 N.E.2d 313 (*Dennis*).) In *Dennis* the court discussed the burden of proof as follows:

> "There is little doubt but that the commissioners' roll occupies the center of the stage in a drainage assessment case. The statute permits the jury to take it with them to the jury room. We have already observed that it is the duty of the objectors to show that it is not correct as to their lands. We know of no way whereby they can show their assessment incorrect without at the same time showing what it should be. To this extent, the burden of proof does shift.

> The necessity for the assessment has already been determined as a matter of law by the court. The inquiry of the jury and the issue before it was to find by its verdict from all of the evidence, the amount of benefits to each specific property which must not exceed the cost and which must not be more than its just proportion of the total assessment. Within these limitations, the finding may be from zero benefits on up. The statutory purpose is to find a fair and just assessment for each property. This is the purpose of the trial and the duty of the jury. The jury must be persuaded that their roll does just that. If the commissioner's roll is incorrect, the burden rests with the objectors to show that fact and the extent to which it is incorrect as to each specific property of the objectors. In our judgment the jury was properly instructed on the issues and the burden of proof." *Dennis*, 58 Ill. App. 2d at 478, 207 N.E.2d at 319-20.

■ In the case at bar, the Sanitary District offered no evidence as to the amount of benefits. The evidence presented by the Sanitary District consisted of Garrison's testimony. Garrison testified on direct examination that he had been employed by the Sanitary District for 14 years. He stated that 15 out of a total of 22 square miles were served by the Sanitary District outlet into the Drainage District's ditch, that the Sanitary District discharged effluent into the ditch through more than one outlet at the Urbana plant and that one of the outlets was an emergency bypass outlet. Garrison testified that during

the 14 years he was employed by the Sanitary District, there was only one "50 year storm" and that storm did not disrupt the operation of the Sanitary District. On cross-examination Garrison testified that storm waters infiltrated the sanitary sewer system and were treated as effluent and discharged into the Drainage District's ditch. He further testified that excess storm waters outlet into the ditch and the emergency bypass system discharges into the ditch. Finally, he testified that the Sanitary District had funds available to pay annual assessments. This testimony did not address the issue of benefits and was insufficient to overcome the Drainage District's *prima facie* case. Consequently, the trial court correctly directed a verdict in favor of the Drainage District.

We note that one motion was taken with the case. On May 12, 1988, the Drainage District filed in this court a motion to strike the Sanitary District's exhibits Nos. 1 through 4 and certain arguments in the Sanitary District's brief. The Sanitary District has filed no response to the motion to strike.

The Drainage District's motion alleges that exhibits Nos. 1 through 4 of the Sanitary District were never offered or admitted into evidence and therefore should not be considered by this court. The motion to strike also alleges that certain contentions advanced in the Sanitary District's brief are unsupported by facts or evidence in the record and should not be considered by this court.

■ Regarding the four exhibits, courts have held that in the absence of a stipulation between the parties, matters not properly part of the record cannot be considered by a court on review (*People v. Haas* (1981), 100 Ill. App. 3d 1143, 427 N.E.2d 853) even though they may be included in the record or transcript. (*Iczek v. Iczek* (1963), 42 Ill. App. 2d 241, 191 N.E.2d 648; *People v. Sheridan* (1977), 51 Ill. App. 3d 963, 367 N.E.2d 422, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 68, 98 S. Ct. 1622; *People v. Reese* (1984), 121 Ill. App. 3d 977, 460 N.E.2d 446.) In the instant case, we find no reference to defendant's exhibit No. 1 in the report of proceedings. Defendant's exhibits Nos. 2, 3, and 4 were marked, identified by a defense witness, and used briefly in connection with the direct examination of that witness. However, none of the four exhibits were ever filed in the circuit court and none were introduced, much less proffered, into evidence during the proceedings below. (See *People v. Gholston* (1984), 124 Ill. App. 3d 873, 464 N.E.2d 1179.) As these documents are *dehors* the record and there was neither a stipulation between the parties, nor a request made to this court seeking to supplement the record with four exhibits, the Drainage District's motion to strike is allowed as to the

defendant's four exhibits, as well as to any facts or argument contained in the defendant's brief which pertain to these exhibits. Similarly, the Drainage District's motion to strike the unsupported statements is allowed as these statements refer to matters *dehors* the record. *In re Estate of Williams* (1982), 109 Ill. App. 3d 828, 441 N.E.2d 412.

For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

LUND and KNECHT, JJ., concur.